Jack JONES, Jr. *v.* STATE of Arkansas

CR 96-541                                    947 S.W.2d 339

Supreme Court of Arkansas
Opinion delivered June 16, 1997

*Craig Lambert* and *Arkansas Public Defender Commission, Capital, Conflicts, and Appeals Office*, by: *Elizabeth Johnson* and *DiDi Sallings*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. The appellant, Jack Jones Jr., was convicted of the capital murder and rape of Mary Phillips, and the attempted capital murder of Lacy Phillips. He was sentenced to death by lethal injection, life imprisonment, and thirty years' imprisonment, respectively, for the crimes. We affirm the convictions and sentences.

On the afternoon of June 6, 1995, seventeen-year-old Darla Phillips dropped her eleven-year-old sister Lacy off at Automated Tax and Accounting Service in Bald Knob, where their mother, thirty-four-year old Mary Phillips, worked as a bookkeeper. Mary was planning to take her daughter to a 3:00 p.m. dentist appointment. Darla and her fifteen-year-old brother Jessie were expecting their mother and little sister to return to their home in Bradford around 4:30 p.m. or 5:00 p.m. They never arrived.

A black-haired male entered the business before Lacy and her mother could leave for the dentist's office. According to Lacy's testimony at trial, the man had a teardrop tattoo on his face and more tattoos on his arm. The man had come into the business earlier that day to borrow some books. When he returned, he complained that he had been given the wrong book. He then told Lacy and her mother that he was "sorry," but that he was "going to have to rob (them)." He ordered Mary to lay down on her stomach, and then made Lacy lay down on top of her mother. After retrieving the cash out of the register, he took them into a small break room. The man took Lacy into a bathroom off of the break room, tied her to a chair, then left. When he returned, Lacy, now crying, asked the man not to hurt her mother, to which he replied, "I'm not. I'm going to hurt you." He began to choke Lacy until she passed out. After Lacy lost consciousness, Jones struck her at least eight times in the head with the barrel of a BB gun, causing severe lacerations and multiple skull fractures. When Lacy woke up, she saw blood and began to vomit. She went back to sleep and awakened later when police, seeing her bloodied body and thinking she was dead, were taking photographs of her.

Police found Mary's body nude from the waist down. A cord from a nearby *Mr. Coffee* pot was wrapped around her neck and

wire was tied around her hands, which were positioned behind her back. Bruises on her arms and back indicated that she had struggled with her attacker prior to her death. According to autopsy results, Mary died from strangulation and blunt-force head injuries. Rectal swabs indicated that she had been anally raped before she was killed.

Based on Lacy's description of the assailant, Arkansas State Police Investigator Jerry Brogdon went to Jones's residence and asked him if he would accompany him to the White County Sheriff's Office. At destination, Jones was read his *Miranda* rights and signed a waiver-of-rights form. He admitted that he had committed the crimes because he wanted to get revenge against the police. He reasoned that his wife had been raped, and that the police had done nothing about it.

### Admission of photograph

Jones first claims that the admission of a State's Exhibit 49, a photograph of Lacy's skull taken prior to surgery, should not have been admitted into evidence at his trial. According to him, the photograph was cumulative of the other photographs introduced and was unduly prejudicial.

We recently discussed the guideposts in determining whether a trial court abuses its discretion in admitting photographs in *Camargo v. State*, 327 Ark. 631, 940 S.W.2d 631 (1997):

> We have often stated that the admission and relevancy of photographs is a matter within the sound discretion of the trial court. *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980). Although highly deferential to the trial court's discretion in these matters, this court has rejected a *carte blanche* approach to admission of photographs. *Berry v. State*, 290 Ark 223, 227, 718 S.W.2d 447, 450 (1986). We have cautioned against "promoting a general rule of admissibility that essentially allows automatic acceptance of all photographs of the victim and crime scene the prosecution can offer." *Id.* at 228, 781 S.W.2d at 450. This court rejects the admission of inflammatory pictures where claims of relevance are tenuous and prejudice is great, and expects the trial court to carefully weigh the probative value of photographs against their prejudicial nature. *Id.* at 228–29, 781 S.W.2d at 450.

> We require the trial court to first consider whether such evidence, although relevant, creates a danger of unfair prejudice, and then to determine whether the danger of unfair prejudice substantially outweighs its probative value. *Beed v. State*, 271 Ark. 526, 609 S.W.2d 898 (1980). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403.
>
> Even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand testimony. *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994). Other acceptable purposes are to show the condition of the victim's bodies, the probable type or location of the injuries, and the position in which the bodies were discovered. *Harvey v. State*, 292 Ark. 267, 729 S.W.2d 406 (1987). Of course, if a photograph serves no valid purpose and could only be used to inflame the jury's passions, it should be excluded. *Berry v. State*, 290 Ark 223, 718 S.W.2d 447 (1986). The same guidelines that apply to photographs also apply to videotapes. *Hickson v. State*, 312 Ark. 171, 847 S.W.2d 691 (1993).

327 Ark. at 637-8. An essential element of the attempted murder charge was the degree of intent. To secure a conviction for attempted capital murder, the State had to prove that Jones, "with [a] premeditated and deliberated purpose," attempted to cause Lacy's death. Ark. Code Ann. § 5-10-101(a)(4). We have often held that the nature and extent of a victim's wounds is relevant to a showing of intent. *Camargo v. State, supra; citing Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943, *cert. denied* 117 S.Ct. 436 (1996); and *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995).

In the present case, prior to trial, the State initially sought to admit ninety-nine photographs. The trial court denied admission of these photographs on the basis that they were cumulative of others that it was admitting into evidence. The trial court, did, however, admit a second set of photographs, thirty-nine in number, that were offered by the State. The photo at issue is among these thirty-nine photographs and was the only one that Jones objected to at trial. It depicts Lacy's skull with the scalp peeled back and was taken prior to her surgery.

The trial court conducted a preliminary hearing on the admission of the photograph at issue. Dr. Harold Smith, the neurosurgeon who performed Lacy's surgery, testified that the photograph was a fair and accurate depiction of Lacy's skull prior to the surgical procedure. According to Dr. Smith, the photograph would assist him in his testimony and was the only one that demonstrated the multiple and depressed fragments of bone that were driven down into Lacy's brain. It was Dr. Smith's opinion that, without this photograph, his testimony would be more difficult for a lay person to understand. After hearing this testimony, the trial court ruled that the photo was admissible on the basis that it depicted Lacy's life-threatening and serious injuries and would help Dr. Smith explain the nature and extent of Lacy's injuries to the jury.

We agree with the trial court's assessment that the photograph aided the jury in understanding Dr. Smith's testimony regarding the nature and extent of Lacy's head injuries. The trial court very carefully considered the photograph at issue and made a well-reasoned determination to allow its admission. In sum, we cannot say that the trial court abused its discretion in admitting the photograph.

### Inconsistent verdict forms

Jones also claims that he is entitled to a new sentencing trial due to the jury's inconsistent findings regarding certain mitigating circumstances. The jury in his case unanimously found, on Form One, that the following five aggravating circumstances existed: (1) Jones had previously committed another felony involving the use or threat of violence; (2) in the commission of capital murder, he knowingly created a great risk of death to a person other than the victim; (3) the capital murder was committed for the purpose of avoiding or preventing an arrest; (4) the capital murder was committed for pecuniary gain; and (5) the capital murder was committed in an especially cruel or depraved manner. On subsection (a) of Form Two, the jury unanimously found that the following three mitigating circumstances probably existed: (1) Jones cooperated with the police by voluntarily accompanying them to the police department; (2) he cooperated with the police by giving

them a full confession and accepting full responsibility for these offenses; and (3) he had a turbulent and troubled childhood.

On Form Three — Conclusions, the jury found that one or more aggravating circumstances did exist beyond a reasonable doubt at the time of the murder; that the aggravating circumstances outweighed beyond a reasonable doubt any mitigating circumstances found by any juror to exist; and that the aggravating circumstances justified beyond a reasonable doubt a sentence of death. Upon Jones's request, the trial court modified Form Three to read that, if the jury made these three findings, it *may* sentence Jones to death. On Form Four, the verdict form, the jury indicated that, after careful deliberation, it was sentencing Jones to death. The signature of each juror appears on this form. Jones does not take issue with the jury's findings on Form One, subsection (a) of Form Two, Form Three, or Form Four.

What Jones does challenge is the confusing manner in which the jury completed subsections (b) and (c) of Form Two. In subsection (b), the jury indicated that one or more of the jurors believed that the following mitigating circumstances probably existed, but that they did not unanimously agree that such mitigating circumstances probably existed: (1) Jones suffered from the mental disease or defect of attention-deficit hyperactivity disorder; (2) despite his efforts, Jones was repeatedly misdiagnosed and treated with inappropriate medications; (3) Jones's parents were often inconsistent in disciplining their children; (4) Chris Jones loves and is dependent on his father, Jack Jones; and (5) Chris Jones would be harmed psychologically if his father were sentenced to death.

Subsection (c) of Form Two instructed the jury to check the applicable factors where they believed that there was some evidence presented to support the mitigating circumstances offered, but where they unanimously agreed, after considering the evidence, that it was insufficient to establish that the mitigating circumstances probably existed. Despite the fact that subsection (c) instructed the jury not to check any factors in this section that it had checked in any other section, the jury checked the following factors that it had also checked in subsection (b): (1) Jones suffered

from the mental disease or defect of attention–deficit hyperactivity disorder; (2) despite his efforts, Jones was repeatedly misdiagnosed and treated with inappropriate medications; (3) Jones's parents were often inconsistent in disciplining their children.

In support of his argument that the jury's inconsistent findings require reversal, Jones relies on our decisions in *Camargo v. State, supra*; and *Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995). We think that the facts in those cases are distinguishable from those presently before us. In *Camargo*, Form Three on "Conclusions" was the form in dispute:

> (a) ( ) One or more aggravating circumstances did exist beyond a reasonable doubt, at the time of the commission of the capital murder.
>
> (b) (X) The aggravating circumstances outweigh beyond a reasonable doubt any mitigating circumstances found by the jury to exist.
>
> (c) ( ) The aggravating circumstances justify beyond a reasonable doubt a sentence of death.

The *Camargo* jury only marked (b) on Form Three. On appeal, we concluded that, because the jury failed to mark (a) and (c), a reversal of the death sentence was mandated due to a failure to comply with Ark. Code Ann. § 5–4–603(a)(b) and (c) (Repl. 1993), which requires that the jury unanimously return these three written findings in order for a death sentence to be imposed. *Id.* at 645. Unlike the *Camargo* jury, Jones's jury made these three necessary statutory findings on Form Three.

In *Willett*, the jury completed subsections (a) and (c) of Form Two in a conflicting manner. In subsection (a), the jurors unanimously found that the following mitigating circumstances probably existed at the time of the murder: (1) that Willett had no prior history of criminal conduct, (2) that he had been a model prisoner, and (3) that he had cooperated with police by voluntarily giving a statement about the crimes at issue. However, in subsection (c), the jurors found that there was evidence of the same three circumstances, but unanimously agreed that they were not mitigating circumstances. In reversing Willett's death sentence, we held that, "On this record, it is impossible to discern whether the jury found any mitigating circumstances. Therefore, we reverse

the judgments of sentence to death and remand for resentencing." *Id.* at 628. Conversely, in this case, it is not impossible to determine whether the jury found any mitigating circumstances. They clearly found three: (1) Jones cooperated with the police by voluntarily accompanying them to the police department; (2) Jones cooperated with the police by giving them a full confession and accepting full responsibility for these offenses; and (3) Jones had a turbulent and troubled childhood.

In deciding this issue, the State asks us to clarify our previous interpretations of the United States Supreme Court's decision in *Skipper v. South Carolina*, 476 U.S. 1 (1986). We agree that we must do so. In *Willett* and *Camargo*, we interpreted *Skipper* too broadly to mandate reversal in all cases involving errors relating to mitigating circumstances. *Willett*, 322 Ark. at 628; *Camargo*, 327 Ark. at 645.

In *Skipper*, the Supreme Court held that it was error to prohibit Skipper from introducing the testimony of two jailers and a visitor who would have testified that he had made a good adjustment in jail between his arrest and his trial. The Court held that the exclusion of this evidence denied Skipper his right to place before his sentencer all relevant evidence in mitigation of punishment, and that the exclusion of relevant mitigating evidence at Skipper's trial "impeded the sentencing jury's ability to carry out its task of considering all relevant facts of the character and record of the individual offender." *Id.* at 8. In *Willett*, our parenthetical explanation of *Skipper* went beyond the actual holding of the case. While we agree that the rule in *Skipper* provides that the exclusion of relevant mitigating evidence from the jury's consideration can never be harmless, we do not read *Skipper* to preclude the application of a harmless-error analysis to errors relating to the jury's consideration of that evidence. In the present case, Jones does not complain that he was unable to present relevant mitigating evidence to the jury. In fact, the record reflects that Jones presented his mitigating evidence through the testimony of nine witnesses who testified on his behalf during the penalty phase of his trial.

■ We must also clarify our previous interpretations of Ark. Code Ann. § 5-4-603(d)(Repl. 1993), which reads as follows:

> (d) On appellate review of a death sentence, *if the Arkansas Supreme Court finds that the jury erred in finding the existence of any aggravating circumstance or circumstances for any reason and if the jury found no mitigating circumstances,* the Arkansas Supreme Court shall conduct a harmless error review of the defendant's death sentence. The Arkansas Supreme Court shall conduct this harmless error review by:
> (1) Determining that the remaining aggravating circumstance or circumstances exist beyond a reasonable doubt; and
> (2) Determining that the remaining aggravating circumstance or circumstances justify a sentence of death beyond a reasonable doubt.
> (e) If the Arkansas Supreme Court concludes that the erroneous finding of any aggravating circumstances by the jury would not have changed the jury's decision to impose the death penalty on the defendant, then a simple majority of the court may vote to affirm the defendant's death sentence.

(Emphasis added.) We have previously interpreted this provision to allow us to conduct a harmless-error analysis only if the jury found no mitigating circumstances. *Greene v. State,* 317 Ark. 350, 878 S.W.2d 384 (1994); *Kemp v. State, supra.* However, a plain reading of this provision reveals that it applies when the jury makes an error in finding that an aggravating circumstance exists. There was no such error in this case. The statute simply prescribes a set of parameters where this court must engage in a harmless-error analysis. It does not preclude us from conducting harmless-error analysis in other situations.

We agree with the State that this issue is controlled by our decision in *Wainwright v. State,* 302 Ark. 371, 790 S.W.2d 420, *cert. denied* 499 U.S. 913 (1990). In that case, Wainwright asserted that the trial court erred in denying his motion for judgment notwithstanding the verdict, which was based on his argument that the jury made inconsistent findings regarding a mitigating circumstance. On one form, the jury unanimously found that Wainwright did not resist when arrested; on another form it found this same mitigating factor did not exist. We recognized that, although

the jury may have been inconsistent on this factor, it was clear in unanimously finding that three aggravating circumstances existed at the time appellant committed the murder. We affirmed the trial court's ruling that the error was harmless since the jury had specifically found that the aggravating circumstances outweighed beyond a reasonable doubt all mitigating circumstances, and that each juror, when individually polled, stated that he or she had voted for the death penalty. *Id.* at 387. The Eighth Circuit Court of Appeals held that the jury's inconsistent findings did not rise to an Eighth or Fourteenth Amendment violation where the jury specifically found that three aggravators outweighed beyond a reasonable doubt all mitigating circumstances. *Wainwright v. Lockhart*, 80 F.3d 1226 (8th Cir. 1996), *cert. denied*, 117 S.Ct. 395 (1996).

In this case, the jury made inconsistent findings with regard to the following factors: (1) Jones suffered from the mental disease or defect of attention-deficit hyperactivity disorder; (2) despite his efforts, Jones was repeatedly misdiagnosed and treated with inappropriate medications; and (3) Jones's parents were often inconsistent in disciplining their children. It is unclear whether some or none of the jurors determined that these factors constituted mitigating circumstances. However, even if we were to resolve the confusion in Jones's favor and assume that some of the jurors did conclude that these factors constituted mitigating circumstances, it is clear that the jury unanimously concluded that five aggravating circumstances existed, and that these aggravators outweighed beyond a reasonable doubt *any mitigating circumstances found by any juror to exist.* To be sure, nothing in the forms indicated to the jury that a mitigating circumstance must have been found unanimously before it could be considered in the weighing process. *Pickens v. State*, 301 Ark. 244, 783 S.W.2d 341, *cert. denied* 497 U.S. 244 (1990). The jury further found that the aggravating circumstances justified beyond a reasonable doubt a sentence of death. Moreover, the jury was instructed that, if it made these three statutory findings, it *may* sentence Jones to death. Each juror signed a verdict form sentencing Jones to death, and each juror indicated orally that he or she had voted for the death penalty.

Because the jury specifically found that five aggravators outweighed beyond a reasonable doubt any mitigating circum-

stances found by any juror to exist, we conclude that any inconsistencies by the jury in the completing of subsections (b) and (c) of Form Two were harmless error. *See Wainright v. State, supra.*

### Other errors

The transcript of the record in this case has been reviewed in accordance with Arkansas Supreme Court Rule 4-3(h), which requires, in cases in which there is a sentence of life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a)(1987). No errors have been found.

Affirmed.