Asa STEWART *v.* STATE of Arkansas

CA CR 98-1118                                    992 S.W.2d 147

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered June 2, 1999

*John H. Bradley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. ■ On December 20, 1996, the appellant was charged with capital murder. On February 17, 1998, two days before trial, the State amended the information to add the charge of aggravated robbery. Appellant's objection to the amended information was overruled, and after a trial, the jury found the defendant guilty of first-degree murder and aggravated robbery. Appellant was sentenced to serve consecutive sentences of twenty-five years on the first-degree murder conviction and forty years on the aggravated robbery conviction. On appeal, appellant contends the trial court erred in allowing the State to amend the information one day prior to trial, admitting

gruesome photographs into evidence, and denying his motion for a directed verdict on the charge of aggravated robbery. Appellant does not argue on appeal that there was insufficient evidence to support his conviction for first-degree murder. Arguments not raised on appeal are deemed abandoned. *See King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996). Therefore, this court will not address the sufficiency of the evidence to support the first-degree murder conviction.

On November 14, 1996, appellant and three companions had been at a rest stop outside Blytheville for approximately thirty minutes when the victim, Russell Hinkle, and his family drove into the park. When the Hinkle family arrived, two of appellant's companions were outside the door of the men's room, and the appellant and another companion were inside. However, all four were in the restroom when Hinkle entered. Soon after Hinkle went into the men's restroom, appellant's companion, DeAshley Wright, fired four shots, killing Hinkle. Appellant and his companions ran from the restroom with jackets pulled over their heads and left in their vehicle, which was backed into a parking place with a towel covering the license plate.

Appellant argues that the trial court erred in not granting appellant's motion for directed verdict on aggravated robbery. In reviewing the denial of a motion for a directed verdict, the court views evidence in the light most favorable to the State. *Harris v. State*, 331 Ark. 353, 961 S.W.2d 737 (1998). Evidence is considered sufficient if there is substantial evidence to support the verdict. *Id.* Direct or circumstantial evidence is substantial if it is of sufficient force to compel a conclusion one way or the other beyond speculation or conjecture. *Id.*

Although several witnesses testified at the trial, no evidence was presented that any property was taken or that there was an attempt or threat to take any property from the victim. When the appellant was questioned by the police, he stated that DeAshley asked if they wanted to rob someone, and he replied, "[N]aw, man, I ain't down to no robbing. . . ." The facts presented in this case merely show the appellant was present at the crime scene when his companion fired the gun and killed the vic-

tim. One might speculate the young men entered the restroom to commit murder, or to commit robbery, or to commit robbery and murder, or to use the facilities, unaware that anyone intended to commit a crime. The proof does not compel a conclusion one way or the other. Based upon the State's failure to present such evidence, the appellant's conviction for aggravated robbery is reversed and dismissed. Because we reverse and dismiss his conviction for aggravated robbery, we need not address appellant's objection to the State's amendment of the information to add the aggravated robbery charge.

Appellant also argues that the trial court erred by admitting three gruesome photographs into evidence. The first photograph shows the victim lying in a pool of blood near the restroom after the shooting. Appellant argues that this photograph is gruesome and the verbal descriptions given by witnesses adequately described the shooting. Two additional photographs, objected to by appellant, were autopsy photographs showing metal rods that were inserted through the gunshot wounds. Appellant argues that the trial court abused its discretion in admitting these photographs and asserts they were inflammatory and prejudicial. Appellant asserts that the photographs depicted the victim as if "pinned to a Styrofoam board as part of an insect collection."

■ ■ Even inflammatory photographs may be admitted if they help explain an issue to be submitted to the jury. *Hickson v. State*, 312 Ark. 171, 847 S.W.2d 691 (1993). The discretion of the trial judge will not be disturbed unless the photographs serve no valid purpose. *Jones v. State*, 329 Ark. 62, 947 S.W.2d 339 (1997). The trial court found that the photograph of the victim lying outside the restroom should be admitted to show the location of the victim in relation to the restroom. The court also found that the photographs taken by the medical examiner's office helped the witness explain the path of the bullets through the victim's body. The photographs were admitted for valid purposes, and the probative value of the evidence was substantially outweighed by any danger of unfair prejudice that may have resulted from the introduction of the photographs. Thus, the trial court did not abuse its discretion in admitting the photographs, and appellant's conviction for first-degree murder is affirmed.

Affirmed in part; reversed in part.

ROGERS, PITTMAN, and GRIFFEN, JJ., agree.

ROAF and JENNINGS, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I do not agree that Asa Stewart's conviction and forty-year sentence for aggravated robbery should be reversed. On the night in question, Stewart and three other young men, Steven Edwards, Tyrell Pulley, and DeAshley Wright, were riding around in a car, armed with guns. They went to the rest stop on Interstate 55 just outside of Blytheville and backed the vehicle into a parking spot, with the license plate covered by a towel. They lurked around the rest stop for approximately thirty minutes until Russ Hinkle, the victim, and his wife and daughter stopped to use the rest rooms. As Mr. Hinkle approached the men's rest room, Steven Edwards and Tyrell Pulley, who were outside, quickly entered the rest room. DeAshley Wright and Stewart were already inside. Four shots were heard and Hinkle came out of the rest room and fell to the ground. All four young men ran from the rest room with jackets pulled up over their heads to hide their faces, got into the car, and sped away. They then went to the home of Steven Edwards where Stewart was observed by two people with a .38 weapon, and they were observed trying to clean a seat in the car by using mustard. The weapons were placed in a bag that was later found hidden in the stove of an abandoned house.

During the investigation of Hinkle's death, Stewart gave a statement to police officials in which he disclosed that while he and his companions were riding in the car, DeAshley Wright had talked about wanting to rob someone, and asked "Y'all wanna rob somebody?" However, Stewart maintained that he said "no" to the question, but admitted that he was in a stall of the restroom when Wright shot Hinkle.

Here, Stewart's statement provides the most telling evidence of one of the group's intention to rob a victim prior to going to the rest stop. Stewart willingly went with the other three persons to the rest stop with full knowledge of this intent. Before they arrived at the rest stop, a cloth was placed over the license plate of

the vehicle to prevent its being read by a witness. Once they arrived, Stewart and his cohorts waited in or around the bathroom for about thirty minutes before the Hinkles arrived. When Hinkle approached the rest room, one of the witnesses testified that she observed two of the men waiting just outside the door of the bathroom. When these two saw that Hinkle was coming to the bathroom, they also quickly entered the bathroom. Several shots were heard shortly thereafter, followed by four "young males" seen fleeing from the scene with their coats pulled over their heads to conceal their identities.

I am not unmindful of two decisions by our supreme court, one of which is cited by Stewart, that would arguably support a reversal of this conviction. In *Trotter v. State*, 240 Ark. 269, 719 S.W.2d 268 (1986), the supreme court reduced the appellant's sentence from aggravated robbery to that prescribed for the lesser-included offense of first-degree battery, finding that the appellant's out-of-court confession that he intended to commit a robbery was not corroborated by any other evidence. In *Bishop v. State*, 294 Ark. 303, 742 S.W.2d 911 (1988), the court modified the sentence from that for aggravated robbery to the maximum sentence for the lesser-included offense of aggravated assault for the same reason. However, these cases can be distinguished from Stewart's case. In *Trotter*, the appellant entered a grocery store and immediately shot the owner in the neck, fired at the owner's brother, and exited the store. Four witnesses testified that no words whatsoever were spoken by the appellant or the man with him either before or after the shooting. In *Bishop*, the appellant and a companion entered a liquor store and the appellant swung a bottle of wine at the clerk working behind the counter, again without stating his purpose.

With regard to the shooting of Mr. Hinkle, unfortunately, he did not survive his chance encounter with the four armed young men in the public bathroom of a highway rest stop. We do not know what words were spoken, because they aren't talking, and he cannot. But we do have additional circumstances not present in *Trotter* or *Bishop* tending to corroborate Stewart's statement that a robbery was intended: Stewart and his companions lurked around the rest stop until the victim, an elderly man, entered

alone; two of the men quickly followed Hinkle inside; all were armed, and their car was poised for a quick getaway with the license plate concealed. I do not agree that the jury needed to resort to speculation to determine the purpose behind these actions.

The jury has the sole authority to evaluate the credibility of witnesses and to apportion the weight to be given to the evidence. *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998). It is for the jury to resolve any questions of conflicting testimony and inconsistent evidence, and the jury may choose to believe the State's version of the facts over the defendant's. *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998). Additionally, the supreme court has often stated that a defendant's improbable explanation of suspicious circumstances is admissible as proof of guilt. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993); *Bennett v. State*, 297 Ark. 115, 754 S.W.2d 799 (1988). The presence of an accused in the proximity of a crime, opportunity, and association with a person involved in the crime in a manner suggestive of joint participation are relevant facts in determining the connection of an accomplice with the crime. *Harrell v. State*, 331 Ark. 232, 962 S.W.2d 325 (1998).

The jury clearly did not believe that Stewart was merely using the bathroom at the time of the shooting, or that he was totally oblivious to the preparations made to set the stage for a quick getaway. Viewing the evidence in the light most favorable to the State, I cannot say that a reasonable jury could not find that Stewart willingly participated in a botched robbery attempt, and would affirm this conviction.

JENNINGS, J., joins.