Asa D. STEWART *v.* STATE of Arkansas

CR 99-728                                        999 S.W.2d 684

Supreme Court of Arkansas
Opinion delivered September 30, 1999

*John H. Bradley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. Appellant, Asa D. Stewart, was found guilty of aggravated robbery and first-degree murder in connection with the death of Russell Hinkle at a rest stop outside Blytheville, Arkansas. Stewart was sentenced to consecutive terms of twenty-five years' imprisonment in the Arkansas Department of Correction for the murder conviction and forty years' imprisonment for the robbery offense. In the first appeal of this matter to the Arkansas Court of Appeals, Stewart challenged (1) the trial court's decision permitting the State to amend the felony information two days prior to trial to add the offense of aggravated robbery, (2) the sufficiency of the evidence supporting his aggravated-robbery conviction, and (3) the trial court's admission into evidence of three photographs. The appellate court reversed and dismissed appellant's aggravated-robbery conviction, affirmed the trial court's admission of the photographs, and affirmed appellant's first-degree murder conviction. *See Stewart v. State*, 67 Ark. App. 1, 992 S.W.2d 147 (1999). In light of its decision reversing and dismissing the robbery conviction, the court declined to address Stewart's objection to the amended information.

Subsequently, we granted review of the Court of Appeals' decision. Our jurisdiction is authorized pursuant to Ark. Sup. Ct. Rule 2-4 (1999). When we grant a petition to review a case decided by the Court of Appeals, we review it as if it was filed originally in this court. *See Williams v. State*, 328 Ark. 487, 944 S.W.2d 822 (1997) (citing *Allen v. State*, 326 Ark. 541, 932

S.W.2d 764 (1996)). In the instant appeal, Stewart again challenges the amendment of the felony information shortly before trial, the sufficiency of the evidence supporting the aggravated-robbery conviction, and the trial court's admission of three photographs. We find no merit in appellant's arguments, and we affirm the trial court. Further, we reverse in part and affirm in part the Court of Appeals.

## I. Amendment of felony information

The appellants' first point on appeal contends that the trial court erred by permitting the State to file an amended information alleging aggravated robbery, pursuant to Ark. Code Ann. section 5-12-103, as a separate count from the capital-felony-murder count in the original, December 20, 1996, felony information. Specifically, Stewart argues that he was prejudiced by the amended information because he was taken by "surprise" immediately prior to trial. However, during the pretrial conference, defense counsel acknowledged:

> Also, the State has filed an amended information yesterday. *I was told about it last Friday. I really don't have any objection to the amendment on the capital murder. [The prosecutor] has made me aware that he was going to do that sometime ago, so I'm not really surprised,* but I am objecting to the addition of the charge which my client was not charged with, which is aggravated robbery. I can't say I don't know how to defend an aggravated robbery case. I've done lots of them, but at this late stage, the day before the trial, to be charged with another Class Y felony, I think violates his due process rights.

In any event, the State is entitled to amend an information at any time prior to the case being submitted to the jury so long as the amendment does not change the nature or degree of the offense charged or create unfair surprise. *See Manning v. State,* 318 Ark. 1, 4, 883 S.W.2d 455, 457 (1994) (citing *Kilgore v. State,* 313 Ark. 198, 852 S.W.2d 810 (1993)). Significantly, the mere fact that an amendment authorizes a more severe penalty does not change the nature or degree of the crime. *See id.*

In support of its position that the prosecutor changed the nature of the charge by amending the information, appellant cites

*Harmon v. State*, 277 Ark. 265, 641 S.W.2d 21 (1982). However, the prosecutor in *Harmon* amended the information by adding a different underlying felony without adequate notice to the defendant. *Harmon*, 277 Ark. at 269-70, 641 S.W.2d at 23-24. Here, the original information set out all the elements of aggravated robbery. The December 20, 1996, felony information alleged that Stewart committed capital murder with premeditation and deliberation and in the course of and in the furtherance of a robbery during which the victim was shot multiple times.

▪ Given that the language of the original information contemplates the elements for aggravated robbery and, more importantly, that defense counsel acknowledged his awareness that the State would be amending the information, we cannot say that the appellant was prejudiced by surprise. Accordingly, we hold that the trial court did not err by permitting the State to amend the information to include the aggravated-robbery charge.

## II. Sufficiency of the evidence

▪ At the close of the State's case-in-chief and at the close of evidence, Stewart moved for a directed verdict of not guilty on the aggravated-robbery charge. The trial court denied the motions. On appeal, we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Freeman v. State*, 331 Ark. 130, 131, 959 S.W.2d 400, 401 (1998) (citing *Williams v. State*, 329 Ark. 8, 16, 946 S.W.2d 678, 682 (1997)). When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is any substantial evidence to support it, when viewed in the light most favorable to the State. *Freeman*, 331 Ark. at 131-32, 959 S.W.2d at 401.

▪▪ Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Freeman*, 331 Ark. at 131-32, 959 S.W.2d at 401. Notably, the evidence may be either direct or circumstantial. *Gillie v. State*, 305 Ark. 296, 301, 808 S.W.2d 320, 322 (1991). Circumstantial evidence can provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsis-

tent with any other reasonable conclusion. *Gillie*, 305 Ark. at 301, 808 S.W.2d at 322 (citing *Trotter v. State*, 290 Ark. 269, 719 S.W.2d 268 (1986)).

In the instant case, the State theorized that appellant acted as an accomplice in Hinkle's robbery and murder. Although appellant does not attack the sufficiency of the murder conviction, he suggests that the evidence is insufficient to support the State's theory that a robbery occurred. Notably, during a statement to the police, appellant implicated DeAshley Wright in Hinkle's death, and the parties later stipulated that Wright shot Hinkle with a .45 caliber semiautomatic pistol.

We have stated that the presence of an accused in the proximity of a crime in a manner suggestive of joint participation is a relevant factor in determining an accomplice's connection to a crime. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996). Relevant factors include (1) the presence of the accused in proximity of a crime, (2) the opportunity to commit the crime, and (3) an association with a person involved in the crime in a manner suggestive of joint participation. *Britt v. State*, 334 Ark. 142, 974 S.W.2d 136 (1998); *Harrell v. State*, 331 Ark. 232, 962 S.W.2d 325 (1998). Moreover, flight following the commission of an offense is a factor that may be considered with other evidence in determining probable guilt. *Passley*, 323 Ark. at 306, 915 S.W.2d at 251; *Hill v. State*, 325 Ark. 419, 931 S.W.2d 64 (1996).

Here, appellant admitted in his statement to police that it was DeAshley Wright's intent to rob someone on the evening of November 14, 1996. Wright, appellant, and others discussed the possibility of robbing someone, but appellant claimed that he replied "no." However, he admitted to accompanying his associates to the rest stop with knowledge of their intent. According to appellant, prior to Hinkle's shooting, he accompanied three other youths, armed with weapons, to the rest stop. Wright backed their vehicle, with a towel-covered license plate, into a parking spot. The group then loitered at the rest stop about thirty minutes, and, when Hinkle, an elderly man, entered the bathroom alone, two of appellant's group also entered the bathroom. Stewart admitted that he was armed with a handgun that evening but

contended that he did not have the gun in the bathroom. While in the bathroom, appellant heard four shots and saw Hinkle fall to the ground. Stewart suggested that he was unaware that Wright had prepared for a quick getaway, but, nevertheless, he fled with the others following the shooting and attempted to conceal his identity.

Later that evening, appellant accompanied Wright to Steven Edwards's home. Edwards testified that he saw appellant with a .38 caliber weapon and that he observed Wright and Stewart attempting to clean a possible blood stain from the car seat. Additionally, following the arrests of Tyrell Pulley and Steven Edwards, Sergeant Ross Thompson recovered a cache of weapons, including appellant's .38 caliber handgun.

Other witnesses testifying for the State provided additional evidence of appellant's participation in a botched robbery attempt. First, Michele Kinaan, the victim's daughter, testified that when she and her parents stopped at the rest stop, she saw "two black young males standing outside the door of the men's room, just standing there, and then as we got closer, they both . . . quickly went in the rest room." Once inside the women's room, Kinaan heard four shots, came out of the restroom, and saw her father lying on the ground.

Kenneth Stark, a truck driver, also testified that he was at the rest stop at the time of the shooting. He observed "a group of youths, probably in their mid to late teens . . . three African Americans and one Caucasian male." Stark noted that the men were all wearing "rather large bulky shirts." He also observed an elderly gentleman, his wife, and daughter, go into the restrooms. He then heard four loud bangs and saw four youths run from the restroom and sprint around the corner of the building.

Another State's witness, Charles Meyers, testified that he saw four people come running out from the restroom area following the shots, pass in front of him, and get in a red car, which was parked "opposite the way the parking spaces were lined out" and was "backed in." He noted that he could not see any of the group's faces because they had heavy winter jackets pulled up over their heads. He described the group as "younger people." Signif-

icantly, Meyers was unable to see the license plate because it was covered with "a towel or something."

Daniel Roy Hohn testified that on the day of the shooting he went to Steven Edwards's house, and Edwards, DeAshley Wright, Tyrell Pulley, and appellant soon arrived in a red car. Hohn noted that the foursome acted "pretty nervous." He also observed that Wright had a .45 caliber gun and that Stewart had a .38 caliber gun. Then, he saw Wright, Edwards, and appellant outside cleaning the driver's seat of the car with mustard.

Finally, Katherine Crigger, a former girlfriend of Edwards, testified that she saw appellant and the others in Edwards's bedroom on the day of the shooting. Among other things, she observed appellant pull a handgun "from the mattress and [stick] it in his pants."

We have long held that the trier of fact is free to believe all or part of a witness's testimony. *Freeman*, 331 Ark. at 134, 959 S.W.2d at 402 (citing *Mosley v. State*, 323 Ark. at 250, 914 S.W.2d at 734). The credibility of witnesses is an issue for the jury and not for this court. *Marta v. State*, 336 Ark. 67, 74, 983 S.W.2d 924, 928 (citing *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998); *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998)). Further, the jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998). We have also stated that a defendant's improbable explanation of suspicious circumstances may be admissible as proof of guilt. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993); *Bennett v. State*, 297 Ark. 115, 754 S.W.2d 799 (1988).

Given appellant's knowledge that his associates contemplated a robbery, his admission that he arrived at the rest stop armed and loitered for about thirty minutes, his acknowledgment that he was in the bathroom at the time Hinkle was shot, and testimony that appellant covered his head, fled with the group, and was later seen with a weapon, the jury had substantial evidence to conclude that appellant participated in a botched robbery attempt.

Viewed in the light most favorable to the State, we conclude that there is sufficient evidence to support appellant's aggravated-robbery conviction.

## III. Admission of photographs

Arguing that three images are "gruesome," "bloody," "inflammatory," and "prejudicial," appellant objects to the trial court's admission of (1) a photograph depicting the victim at the crime scene as he was discovered by the police, and (2) two autopsy photographs. Ark. R. Evid. 403 (1999) permits the exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Accordingly, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Ark. R. Evid. 403.

■ This court will not reverse a trial court for admitting photographs absent an abuse of discretion. *Jones v. State*, 329 Ark. 62, 65, 947 S.W.2d 339, *cert. denied*, 118 S. Ct. 574 (1997). In *Jones*, we discussed the guidelines for determining whether a trial court has abused its discretion by admitting photographs. For example, although we are highly deferential to a trial court's discretion, we have rejected a *carte blanche* approach to the admission of photographs. *Jones*, 329 Ark. at 65, 947 S.W.2d at 340 (quoting *Camargo v. State*, 327 Ark. 631, 940 S.W.2d 631 (1997) (internal citations omitted)). In making the admission determination, we require a trial court to consider, first, whether the relevant evidence creates a danger of unfair prejudice, and, second, whether the danger of unfair prejudice substantially outweighs its probative value. *Jones*, 329 Ark. at 66, 947 S.W.2d at 341 (quoting *Camargo v. State*, 327 Ark. 631, 940 S.W.2d 631 (1997) (internal citations omitted)).

■ Significantly, after applying the Rule 403 balancing test, we have held that even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or

enable the jury to better understand the testimony. Other acceptable purposes are to show the condition of the victim's body, the probable type or location of the injuries, and the position in which the body was discovered. Obviously, when a photograph serves no valid purpose and could only be used to inflame the jury's passions, it should be excluded. *Jones,* 329 Ark. at 66, 947 S.W.2d at 341 (quoting *Camargo v. State,* 327 Ark. 631, 940 S.W.2d 631 (1997) (internal citations omitted)).

Here, Stewart argued that the first photograph, showing the victim lying in a pool of blood near the men's restroom, was too gruesome and that verbal descriptions adequately described the crime scene. However, the trial court determined that the photograph was probative because it showed the victim's location in relation to the restroom doors and to pay telephones. Given the acceptable purposes for admitting photographs, we cannot say that the trial court abused its discretion by admitting this crime-scene photograph.

Similarly, appellant claimed that two autopsy photographs, showing metal rods inserted through the victim's gunshot wounds, were inflammatory and prejudicial. Appellant suggested that the photographs depicted Hinkle's arms "pinned in sort of an odd position which would be grotesque." In response, the trial court noted that the autopsy photographs reflected a natural arm position resulting from the arms being up and the hands being toward the face. Moreover, the trial court remarked that the photographs showed the nature and direction of the wounds and the path of the bullet "probably in the most descriptive manner that [the trial court has] ever seen. . . ." Consequently, the trial court found that the photographs' probative value relating to the nature of the wounds was not substantially outweighed by any danger of unfair prejudice. In light of the acceptable purposes for admitting photographs, we conclude that the trial court did not abuse its discretion by admitting these autopsy photographs.

In conclusion, we affirm the trial court and the Court of Appeals with respect to appellant's first-degree-murder conviction and the admission of photographs. However, we reverse the Court of Appeals' decision reversing and dismissing appellant's

aggravated-robbery conviction. Accordingly, we affirm appellant's first-degree-murder and aggravated-robbery convictions.