Steve Lenn HILL  *v.*  STATE of Arkansas

CR 06-686

257 S.W.3d 534

Supreme Court of Arkansas
Opinion delivered May 24, 2007

*Dennis R. Molock*, Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Steve Lenn Hill appeals his convictions in the Arkansas County Circuit Court for three counts of kidnapping, three counts of aggravated assault, one count of battery in the second degree, one count of residential burglary, and being a felon in possession of a firearm. On appeal, he argues that the trial court erred in allowing the State to (1) amend its felony information after the trial was underway; and (2) introduce a statement that had not been provided to him under the rules of discovery. As Hill was sentenced to life in prison, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1). We find no error and affirm.

*Facts*

On January 12, 2005, the DeWitt Police Department received a report that someone was trying to break into a residence belonging to Tim and Delois Cox. Officer Randy Bateman was dispatched to the home on South Lee Street in DeWitt and upon arriving there discovered Hill beating on a carport door. After noticing that Hill was holding a black automatic pistol, Officer Bateman drew his weapon and ordered Hill to drop his weapon. Thereafter, Hill fired two rounds into the door and dropped his gun onto the hood of a car. The officers told Hill he was under arrest and ordered him to put his hands behind his back. When he refused, the officers pepper sprayed him. Hill ran away and busted through the carport door into the Cox's house. The officers followed Hill into the residence and witnessed Hill fighting with

Tim, who informed officers that Delois had been shot. It took officers approximately ten to fifteen minutes to subdue Hill and place him under arrest.

Hill was charged as a habitual offender with three counts of kidnapping, three counts of criminal attempt to commit murder, three counts of aggravated assault, one count of battery in the first degree, one count of residential burglary, and being a felon in possession of a firearm.

A jury trial was held on November 10, 2005. Delois Cox testified that she had previously left her husband for Hill. Delois then left Hill and decided to return to her husband. Approximately three days after returning to Tim, Hill called Delois and asked to see her. Delois, who had just been to the hospital and received a shot because of a migraine, refused to see him. Hill's cousin then called and asked Delois to see Hill, again she refused. When Hill called again, Tim answered and told him that Delois did not want to see him. A short time later, Delois, Tim, and Delois's grand-daughter, Heidi, heard someone banging on a carport door. Delois opened the door, and Hill, who was holding a gun, demanded that Delois come with him. At one point, he grabbed Delois but Tim was able to pull Delois back into the house. Hill started banging on the door again and then fired a shot that came through the door, striking Delois in the hand. Delois stated that as a result of her gunshot wound, she has lost much use in her hand. On cross-examination, Delois stated that she knew that Hill "kind of gets — he gets crazy" and when she first saw him that night, he "just looked crazy in his eyes." She further stated that she did not believe Hill would intentionally hurt her and that she did not want him to be prosecuted in connection with this incident.

Tim also testified that after repeatedly calling, Hill showed up at their house, banging on the door. According to Tim, Hill was waving a gun around and saying he should shoot him. Tim also stated that at one point Hill grabbed Heidi while waving the gun around and stating that he could kill everybody. Then, Hill attempted to drag Delois out of the house, demanding that Tim hand over his car keys and stating that, "he was going to end it tonight." Tim stated that he was frightened for his safety, as well as the safety of Delois and Heidi. He eventually got his family to a back bedroom and when Hill burst into the bedroom, Tim shot him through the neck. Officers entered the home and eventually subdued Hill.

Following the presentation of its case, the State moved to dismiss the three counts of criminal attempt to commit murder filed against Hill. In addition, the State moved to amend the three charges of kidnapping filed against Hill to further include the purpose of "[i]nflicting physical injury to her, terrorizing him or another person, or facilitating the commission of a felony or flight thereafter." The State explained that it wished to amend the information so as to conform to the proof presented at trial. Hill objected to the amendment, but the trial court allowed it and told Hill that he could recall any State witness for further examination. Hill declined and then rested without presenting any evidence.

The jury subsequently returned guilty verdicts as set forth above. Hill was sentenced to three terms of life imprisonment on the kidnapping charges, five years on each count of aggravated assault, five years on the residential-burglary charge, five years on the second-degree-battery charge and five years on the charge for being a felon in possession of a firearm, with these charges to run concurrently. This appeal followed.

## Amended Information

As his first point on appeal, Hill argues that it was error for the trial court to allow the State to amend its felony information at trial after it presented its evidence. According to Hill, the State's amendment to the felony information on the three charges of kidnapping to include the elements of terrorizing or facilitating the commission of any felony or flight thereafter resulted in a due-process violation. Specifically, he argues the State's last-minute amendment prejudiced him as he relied upon the allegation of the original felony information in crafting his defense. The State counters that the trial court properly allowed the amendment and that, in any event, Hill cannot now argue that he was prejudiced when he chose to not recall the State's witnesses for further questioning as allowed by the trial court.

It is well settled that the State is entitled to amend an information at any time prior to the case being submitted to the jury so long as the amendment does not change the nature or degree of the offense charged or create unfair surprise. *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006); *DeAsis v. State*, 360 Ark. 286, 200 S.W.3d 911 (2005); *Stewart v. State*, 338 Ark. 608, 999 S.W.2d 684 (1999). In *Kelch v. Erwin*, 333 Ark. 567, 970 S.W.2d 255 (1998), this court analyzed the issue of whether a trial court properly allowed the State to amend an information to

conform to the proof in the case. In ruling that the amendment was proper, this court quoted from *Wilson v. State*, 286 Ark. 430, 692 S.W.2d 620 (1985) and stated:

> The state is entitled to amend an information to conform to the proof when the amendment does not change the nature or degree of the alleged offense ... Such authorization simplifies procedure and eliminates some technical defenses by which an accused might escape punishment ... The change sought by the state would not have changed the nature or degree of the offense but would merely have authorized a less severe penalty.

*Id.* at 432, 692 S.W.2d at 621 (citations omitted) (quoting *State v. Brown*, 283 Ark. 304, 306, 675 S.W.2d 822, 824 (1984)). This court has even allowed an amendment that authorizes a more severe penalty where the appellant was sufficiently apprised of the specific crime charged "to the extent necessary to enable her to prepare her defense, that being all that is required." *Kelch*, 333 Ark. at 574, 970 S.W.2d at 258 (citing *Workman v. State*, 267 Ark. 103, 589 S.W.2d 20 (1979)).

In the present case, the State originally charged Hill with three counts of kidnapping based on Ark. Code Ann. § 5-11-102(a)(4) (Repl. 1997), which provides that "[a] person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty with the purpose of: . . . [i]nflicting physical injury upon him[.]" As previously explained, following its presentation of evidence, the State moved to amend its information to include the allegations that the kidnappings were for the purpose of terrorizing another or facilitating the commission of a felony. These additional allegations conformed to subsections 5-11-102(a)(3) and (6). After Hill objected, the trial court allowed the State some time to research the case law pertaining to amendments. The State then argued that the amendments were permissible under this court's decisions in *Baumgarner v. State*, 316 Ark. 373, 872 S.W.2d 380 (1994), as well as *Stewart*, 338 Ark. 608, 999 S.W.2d 684, and *Witherspoon v. State*, 319 Ark. 313, 891 S.W.2d 371 (1995). After reviewing these cases, the trial court agreed that the State could properly amend its information.

In *Baumgarner*, 316 Ark. 373, 872 S.W.2d 380, the appellant argued that it was error for the trial court to allow the State to amend its information to include allegations that he was a habitual offender and that the kidnapping was done to terrorize another.

This court rejected the appellant's argument on both points because there was no unfair surprise or prejudice to the appellant in allowing the amendment. In so doing, this court noted that the amendment did not change the nature of the alleged kidnapping, rather it amended only the manner of the alleged commission of the crime of kidnapping. *Id.*

Likewise, in *Stewart*, 338 Ark. 608, 999 S.W.2d 684, this court held that it was not error for the trial court to allow the State to amend an information and add an additional count of aggravated robbery one day before trial where the defense counsel was not surprised by the amendment. In *Witherspoon*, 319 Ark. 313, 891 S.W.2d 371, the appellant argued that it was improper to allow the State to amend its information to assert "serious" physical injury at the close of the State's case-in-chief because it deprived him of the right to cross-examine the State's witnesses as to the seriousness of the injuries he inflicted upon the victim. This court rejected that argument on the basis that there was no unfair surprise where defense counsel was aware of the statutory language involved.

Hill acknowledges these cases but argues that they are distinguishable because here he was unfairly surprised when the State amended its information to include the terror allegation to support the charge of kidnapping. Hill further argues that the case of *Harmon v. State*, 277 Ark. 265, 641 S.W.2d 21 (1982), *overruled on other grounds by White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986), should be applied in the instant case. There, this court held that it was error for a trial court to allow a charge of robbery to be added to the information on the first day of the appellant's trial. The information originally charged that the appellant committed capital-felony murder in the course of a kidnapping. After the jury was sworn, the trial court allowed the State to amend its information to alternatively charge that the appellant committed capital-felony murder in the course of robbery. In finding that the amendment constituted reversible error, this court noted that the amendment changed the nature of the offense and required the appellant to defend against an essentially different charge.

We disagree with Hill that *Harmon* is persuasive in the instant case. In this case, Hill was originally charged with kidnapping. Under the amended information, he was still charged with kidnapping. As was the case in *Baumgarner*, 316 Ark. 373, 872 S.W.2d 380, the amendment did not change the nature of the kidnapping charge; rather, it amended the manner in which the alleged kidnapping took place. Moreover, Hill's argument that he

was unfairly surprised by the amendment is unpersuasive. He claims that he focused on the physical-injury charge in crafting his defense, but a review of the testimony made it clear that Hill also inquired into whether Tim or Delois felt terrorized by Hill's actions. Thus, his argument to the contrary is without merit.

Finally, we agree with the State that Hill cannot now argue on appeal that the trial court's decision permitting the amendment was error when he rejected the court's offer to allow him to conduct additional cross-examination of the State's witnesses. Hill claims to have done so would have called undue attention to the terror element of the kidnapping charges. Such an argument is unavailing where, as previously stated, both Delois and Tim testified about Hill's actions, which clearly indicated that he terrorized them. This court will not reverse when the appellant could have cured an alleged defect at trial and made a conscious decision not to do so. *See, e.g., Williams v. State,* 327 Ark. 97, 938 S.W.2d 547 (1997). Accordingly, Hill's argument on this point is without merit.

### Discovery Violation

Next, Hill argues that it was error for the trial court to allow the State to introduce an oral statement made by him as the statement was not disclosed by the State during the discovery process as required by Ark. R. Crim. P. 17.1. Specifically, Hill argues that testimony by Tim Cox that Hill stated that "[t]his is going to end tonight" was improperly allowed, because the State failed to notify him of that statement despite his pretrial discovery request regarding any oral statements made by him. The State does not dispute that the statement was not disclosed as was required by Rule 17.1, but argues that because Hill failed to avail himself of the remedy made available by the trial court, he is not entitled to relief on appeal.

Rule 17.1(a)(ii) of the Arkansas Rules of Criminal Procedure imposes a duty on the prosecution to disclose upon timely request "any written or recorded statements and the substance of any oral statements made by the defendant[.]" *See also Tester v. State,* 342 Ark. 549, 30 S.W.3d 99 (2000); *Henry v. State,* 337 Ark. 310, 989 S.W.2d 894 (1999). Arkansas Rule of Criminal Procedure 19.7 provides that if the court learns that the prosecution has failed to comply with a discovery rule such as Rule 17.1, the court may order the prosecution to permit the discovery or inspection of

the material not previously disclosed, grant a continuance, prohibit the party from introducing the undisclosed material, or enter such order as it deems proper under the circumstances. *Henry v. State*, 278 Ark. 478, 647 S.W.2d 419 (1983). When testimony is not disclosed pursuant to pretrial discovery procedures, the burden is on the appellant to establish that the omission was sufficient to undermine confidence in the outcome of the trial. *Hicks v. State*, 340 Ark. 605, 12 S.W.3d 219 (2000).

In *Bowden v. State*, 297 Ark. 160, 761 S.W.2d 148 (1988), this court reversed and remanded a capital-murder conviction where the State failed to disclose oral statements made by the defendant. In that case, the defense requested "any oral statements made by the defendant." *Id.* at 178, 761 S.W.2d at 158. The State only turned over statements made by the defendant to law enforcement officers. At trial, defense counsel objected when the State tried to introduce testimony regarding a conversation between the witness and the appellant. The trial court overruled the objection. In reversing, this court held that the plain language of Rule 17.1 does not limit the State's discovery obligation solely to statements made to the police or other authorities; rather, it provides that upon timely request, the prosecution must disclose *any* written or recorded statement and the substance of any oral statement made by the defendant. *Id.* (emphasis added).

Here, the State acknowledges that its argument below that it was not required to provide Hill with the statement was erroneous. The present case, however, is distinguishable from *Bowden* as Hill cannot show that he was prejudiced by introduction of the statement. Specifically, Hill fails to demonstrate how the statement "[t]his is going to end tonight" was proof that he committed any of the offenses with which he was charged. A prosecutorial discovery violation does not automatically result in reversal. *Lowry v. State*, 364 Ark. 6, 216 S.W.3d 101 (2005); *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). The key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Id.* Absent a showing of prejudice, we will not reverse. *Id.* Hill argues that he was prejudiced because Cox's testimony implied that Hill intended to harm someone. This argument is without merit in light of the fact that there was ample other evidence indicating Hill's desire to cause harm, including his statement that he "could kill everybody" and the testimony regarding his firing of the gun

and striking Delois. Hill simply did not bear his burden of proving that he was prejudiced by the use of Cox's statement. As such, Hill's argument on this point fails.

### Rule 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Hill, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.