Lamar WITHERSPOON *v.* STATE of Arkansas

CR 94-999                                              891 S.W.2d 371

Supreme Court of Arkansas
Opinion delivered January 23, 1995

*Claudell Woods*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Lamar Witherspoon, was convicted of attempted second degree murder and felony fleeing. He was sentenced to 35 years imprisonment. The sentence was enhanced due to his use of a firearm.

Mr. Witherspoon's points of appeal have to do with the felony fleeing conviction. In the course of the trial, the prosecution

discovered that the wording of the statute which makes fleeing from an officer a crime, Ark. Code Ann. § 5-54-125 (Supp. 1993), had been changed. Previously, the statute made the offense a misdemeanor unless "personal injury" occurred as a direct result of fleeing on foot, in which case fleeing was a felony. It was changed to make the offense a felony if "serious physical injury" occurs. Mr. Witherspoon contends the Trial Court erred in allowing the State to amend the information to state he had caused "serious physical injury" rather than "personal injury" after it had presented its case in chief. We hold that the amendment to add the word "serious" changed neither the degree nor the nature of the offense charged, and thus no error occurred.

Mr. Witherspoon also contends that because he was only 19 years old at the time of the crime, he could only have been convicted of misdemeanor fleeing because § 5-54-125(c)(5) provides fleeing shall be a misdemeanor if the defendant is under the age of 21 and has no prior fleeing conviction. We decline to consider this point because it was not raised at the trial. *Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992). Even if it had been raised, we would affirm in view of Mr. Witherspoon's testimony that he had previously been convicted of fleeing.

Along with our discussion of the amendment of the information, we will discuss Mr. Witherspoon's contentions that the injury he inflicted upon the police officer who pursued him was not "serious," and that cumulative error should cause his conviction to be reversed.

The evidence included testimony from which the jury could have concluded these facts. Mr. Witherspoon attended a party at the home of a friend where beer and alcohol were served. After the party, he and two of his friends were walking down the street when one of them fired a gun into the air. When a police car approached, they ran. Nashville Police Officer Free testified that he and other officers ran after the three people who had started running as the officers approached. The three split up, and Officer Free pursued Mr. Witherspoon who attempted to hide in bushes. As the officer approached the bushes, Mr. Witherspoon shot and wounded him in the right shoulder, right thumb, and the right hip. Mr. Witherspoon then climbed a nearby fence and continued to run. He turned himself in to the Howard County

Sheriff's Office the following morning.

### 1. *Serious physical injury*

In pertinent part, § 5-54-125 provides:

> (a) If a person knows that his immediate arrest or detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of such person to refrain from fleeing, either on foot or by means of any vehicle or conveyance.

> * * *

> (c) Fleeing shall be considered a Class C misdemeanor, except under the following conditions:

> * * *

> (3) Where serious physical injury occurs to any person as a direct result of the fleeing on foot, the offense shall be a Class D felony;

> * * *

Mr. Witherspoon contends the State did not present sufficient evidence of "serious physical injury" to invoke condition (3). In other words, the State did not prove that Officer Free suffered a "serious physical injury" as that term is defined in the criminal code, thus the charge of a Class D felony was unwarranted and should not have been submitted to the jury.

Arkansas Code Ann. § 5-1-102(19) (Repl. 1993) defines "serious physical injury" as "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." Mr. Witherspoon argues that the State's own witness, Dr. Dunn who treated Officer Free after the shooting, testified that the wounds to the thumb and shoulder were superficial and the wound to the hip was not to the joint or to a blood vessel. Thus, he contends these injuries were not "serious."

The State notes in response that Dr. Dunn testified that the hip injury did not have an exit wound, and an x-ray showed a

bullet slightly above the right hip. Dr. Dunn also testified that the bullet was half an inch from the hip joint and three inches from the femoral artery, which is the main artery that goes to the leg. Officer Free testified he was hospitalized for approximately two days, and was heavily drugged during that time. The bullet remained in his hip at the time of the trial five months after the shooting.

The test is whether, viewing the evidence in a light most favorable to the State, there is substantial evidence to support the verdict. *Byrum* v. *State*, 318 Ark. 87, 884 S.W.2d 248 (1994).

Although two of the wounds to Officer Free were superficial, the hip wound narrowly missed the bone and a major artery. Dr. Dunn told Officer Free he was lucky in that respect. Officer Free was hospitalized for two days after the shooting in a heavily sedated condition.

In *Henderson* v. *State*, 291 Ark. 138, 722 S.W.2d 842 (1987), we considered whether serious physical injury as described in § 5-1-102(19) had been inflicted on a gunshot victim. The victim had been shot twice in the legs, once in the right knee, and once in the left foot with a .22 caliber pistol. She was hospitalized for one night and one day for treatment, and she remained home from work for approximately one month. We held the evidence of serious physical injury was sufficient. Officer Free's injuries were at least as serious as those described in the *Henderson* case.

### 2. Amended information

Mr. Witherspoon contends he was originally charged with only a misdemeanor and that the amendment raised the offense to a Class D felony. We have examined the information as abstracted and in the record, and we find it clearly charged a class D felony. His argument then moves to the contention that it was improper to permit the amendment to assert "serious" physical injury at the close of the State's case in chief because it deprived him of the right to cross-examine the State's witnesses as to the seriousness of the injuries he inflicted upon Officer Free.

A prosecuting attorney may amend an indictment as

to matters of form, but not so as to change the nature or degree of the crime charged. Ark. Code Ann. § 16-85-407 (1987). As long as the nature and degree of the crime remain unchanged, and there is no unfair surprise, the State may amend an information at any time prior to submission of the case to the jury. *Midgett* v. *State*, 316 Ark. 553, 863 S.W.2d 165 (1994); *Baumgarner* v. *State*, 316 Ark. 373, 872 S.W.2d 380 (1994). The nature of the crime remained unchanged; the initial charge was fleeing, and that did not change. The degree of the offense charged was Class D felony, and that did not change.

As to surprise, it is apparent that Mr. Witherspoon's counsel was aware that the law required a finding of "serious" physical injury in order for the felony fleeing charge to be sustained.

> DEFENSE COUNSEL: Dr. Dunn, your conclusion was that there were no serious injuries, is that correct?

> DR. DUNN: My conclusion was that the path of the bullet had not struck the hip or a major blood vessel, but that he had the potential for infection as a result of this injury. But it is correct that the potential of infection exists regardless of where a person is shot.

> DEFENSE COUNSEL: It's your conclusion after evaluation [of] Officer Free on September the 5th . . . that he did not have any serious injuries; is that correct?

> DR. DUNN: I'd have to see my record to see exactly the term that I wrote. I usually write an impression at the bottom.

The record reveals that Mr. Witherspoon's counsel was aware of the current language of the statute at the time he moved for a directed verdict. There was no surprise.

### 3. Cumulative error

For his final point, Mr. Witherspoon argues the amendment to the information, the erroneous charge of a felony rather than a misdemeanor, and errors surrounding the application of the firearm enhancement provisions to his sentence amount to cumulative error. He argues his sentence should be modified to become one appropriate to a Class C misdemeanor, and that any time added as a result of the enhancement statute should be subtracted.

The only authority cited in support of the argument is *Dillon* v. *State*, 311 Ark. 529, 844 S.W.2d 944 (1993). No such argument was presented to the Trial Court.

As discussed above, it was not error to charge Mr. Witherspoon with felony fleeing. Nor was it error to permit the information to be amended. Two of the alleged errors said to have accumulated were not errors.

The third of the alleged errors mentioned has to do with the repeal of the firearm enhancement statute, Ark. Code Ann. § 5-4-505 (1987), after the crime was committed but before the trial. We note that the commitment order refers to both § 5-4-505 and to Ark. Code Ann. § 16-90-120 (1987). The latter statute permits up to 15 years enhancement of sentence by the Trial Court but does not require it as did § 5-4-505. Even if we were to find error on this point, despite the fact that it was not presented to the Trial Court, we could hardly sustain a cumulative error argument on the basis of it.

Although it is not cited by Mr. Witherspoon, we take this opportunity to correct an *obiter* misstatement in *Manning* v. *State*, 318 Ark. 1, 883 S.W.2d 455 (1994). There we said, "We acknowledge that cumulative error can require reversal even in the absence of objections made at trial. *See Dillon* v. *State*, 311 Ark. 529, 844 S.W.2d 944 (1993)." We applied the cumulative error doctrine in the *Dillon* case as it should be applied. Rulings of the Trial Court which would not, standing alone, have caused reversal did, when taken together, amount to reversible error. There were objections to the rulings in question in the *Dillon* case, and we have no case in which we have held that errors to which no objection is made may form the basis of a reversal for cumulative error. In addition, we have *held* that the cumulative error objection itself must be presented to the Trial Court, *Dillon* v. *State*, 317 Ark. 384, 877 S.W.2d 915 (1994); *Baumgarner* v. *State*, 316 Ark. 373, 872 S.W.2d 380 (1994), and that was not done here.

Affirmed.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I concur. Officer Free's hip wound is clearly a protracted impairment of health and "serious

physical injury" as defined under Ark. Code Ann. § 5-1-102(19). As related in the majority opinion, the bullet remains lodged slightly above Free's right hip and is only three inches from his femoral artery. In addition, Dr. Robert Dunn testified the wound was potentially life threatening in that bullet wounds notoriously become infected. The bullet remained in the officer, at least, up to the time of trial or five months after the shooting occurred. For this reason alone, I would affirm as to point one.