James BROWN v. STATE of Arkansas

CR 01-788                                    65 S.W.3d 394

Supreme Court of Arkansas
Opinion delivered December 20, 2001

*B. Kenneth Johnson*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey Weber*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant James Brown was convicted by a jury of one count of second-degree battery, a Class D felony, and two counts of terroristic act, one a Class B felony and the other a Class Y felony. He was sentenced to the statutory minimum of ten years in prison for the Class Y terroristic act conviction and a fine of $1.00 for the Class B and Class D felony convictions. He appeals, raising several points: (1) there was insufficient evidence introduced to prove serious physical injury; (2) a judgment of conviction for both second-degree battery and terroristic act violated Arkansas law and the Double Jeopardy Clause of the United States Constitution; and (3) the circuit court erred in denying his mistrial motion. None of these points requires reversal of his conviction, and we affirm.

During the time period relevant to this appeal, Brown lived in Pine Bluff and was an employee of International Paper, as was his wife Shirley Brown. They had two children. Brown and his wife had been married since 1990. In 1995, Brown was diagnosed with colon cancer. After surgery, he took a year-long leave of absence from his job at International Paper and received intensive treatment for the cancer. During this period, he tried twice to return to work, but both times, he was physically unable to do so. During the period from 1995 to 1997, Brown suffered from extreme distress and anxiety about his health, his job, and his marriage. He sought counseling to aid him in handling the psychological impact of his illness. By July of 1997, he was in better health, and he returned to his job. Upon returning to his job in 1997, Brown learned that his wife had been having an affair with another International Paper employee, Kenneth White. He confronted White about the situation and told him to stay away from his wife. After this incident, Brown and Shirley Brown separated.

On the morning of October 27, 1997, Brown drove his truck to a garbage dumpster to drop off some items. He had battery problems with the truck and was forced to walk home. As he walked toward his house, he noticed his wife leaving in her van. His trial testimony did not address the question of why she was at his

house when the two of them had apparently been separated for some time. He decided to follow her in his car and proceeded to follow her to Regional Park. He parked his car some distance away from her and watched her, suspecting she was meeting White. At trial, Shirley Brown testified that she had not planned in advance to meet White at the park. She stated that she had seen his vehicle in the park, and only then did she decide to drive into the park to talk to him. She pulled her van over and parked it, waiting for White to approach her.

White, meanwhile, drove through the park toward both Brown's and his wife's vehicles. Through a chain-link fence, Brown saw him approaching from roughly 200 to 250 yards away. While White was driving towards Brown, Brown got out of his car and removed his rifle from the trunk. He returned to the front seat of his vehicle, as White approached him slowly. At trial, Brown testified that while White was still in his vehicle and slowly driving toward him, White pulled a handgun and pointed it at him. White denied that he pulled a handgun but admitted that he had one in the front seat of his truck at the time.

At this point, by all accounts, Brown jumped out of his car and motioned for White to stop driving. White did not stop. Brown began firing shots at White. None of the shots hit him. At trial, White estimated that at least five shots were fired into his truck. White testified that he drove off rapidly to the Pine Bluff police station to report the ongoing incident. Brown, however, testified that White drove off slowly and continued to brandish his weapon throughout their encounter.

Pine Bluff police officers began arriving at the scene, as Brown and his wife had their confrontation. Shirley Brown pulled her vehicle out onto the park road as if to exit the park, and Brown began chasing her. They engaged in a high-speed chase for a short distance. Brown rammed his car into the back of his wife's van, at which time she flashed her lights at the approaching police officer, Officer Larry Plunkett, for assistance. At this point, Brown began shooting at the van from inside his car, shattering his own windshield. Nine bullets hit the van, and two wounded Shirley Brown in the buttocks.

Officer Plunkett began chasing Brown's vehicle and radioed for an ambulance because he feared that Shirley Brown had been injured. Brown immediately pulled over to the side of the park road, and Officer Plunkett arrested him without difficulty. In

searching Brown's vehicle, Officer Plunkett found the rifle along with two high-capacity ammunition clips and full-metal jacket, lead-ball bullets. Shirley Brown was taken to the hospital by emergency personnel. The two bullets pierced her small intestine. Part of her intestine was subsequently removed, and she spent nine days in the hospital. Thereafter, she was required to wear a colostomy for three months while her intestine healed.

On October 29, 1997, Brown was charged with two counts of terroristic act, one for his shots fired at his wife and the other for the shots fired at Kenneth White. Brown was also charged with first-degree battery for wounding Shirley Brown. That same day, the State moved the circuit court to commit Brown for a psychiatric evaluation, and the circuit court granted this motion. The psychiatric evaluator found Brown to be competent to stand trial but noted that he was under extreme emotional stress.

On March 30, 1999, Brown's case went to trial. At the trial, Shirley Brown testified that she and Brown, though now separated, resumed living together after the shooting incident, that Brown was a good father, and that he paid the medical bills that insurance did not cover. She testified further that she forgave Brown for the incident, that she felt that she bore some responsibility for it, and that she felt that at the time he was "stressed out" because of her infidelity and his poor health.

At the close of the State's case, Brown moved for a directed verdict on the first-degree battery charge and claimed that the State failed to prove a serious physical injury to his wife. The defense also moved to have the State elect which charge it wanted to pursue with regard to Shirley Brown, claiming that to allow the State to proceed with both would be violative of the Double Jeopardy Clause for two reasons: both charges arose out of a single course of conduct, and both charges have the same elements. The defense renewed its motion for directed verdict at the close of all the evidence. The circuit court denied both motions.

The jury convicted Brown of the terroristic-act charges: a Class Y felony with regard to the terroristic act in connection with Shirley Brown, and a Class B felony with regard to the terroristic act in connection with White. The jury also convicted Brown of the lesser included offense of second-degree battery, a Class D felony. Though Brown was sentenced to 10 years in prison for the Class Y terroristic act against his wife, the jury sentenced Brown to no fine and no time to serve for the Class B and Class D felonies.

The circuit court advised the jury that this was an impossibility under Arkansas sentencing guidelines. The jury then sentenced Brown to ten years and fined him $1.00 apiece for the Class B and Class D felony convictions.

■ The judgment of conviction was appealed to the court of appeals, and that court affirmed the conviction in a plurality decision. *See Brown v. State*, 74 Ark. App. 281, 47 S.W.3d 314 (2001). Brown petitioned for review, and this court granted that petition. He raises three arguments on review. We review the matter as if the appeal had originally been filed in this court. *Harshaw v. State*, 344 Ark. 129, 37 S.W.3d 753 (2001).

## I. Sufficiency of the Evidence

Brown argues that the circuit court erred in failing to direct a verdict on the Class Y terroristic act charge and the first-degree battery charge due to the State's alleged failure to prove that Shirley Brown experienced a serious physical injury. The State responds that Brown was not convicted of first-degree battery but rather of second-degree battery, and because the motion for directed verdict did not address the elements of the lesser included offense, this issue is not preserved for purposes of this appeal. The State also asserts that as to the Class Y terroristic-act conviction, substantial evidence supported the proposition that Shirley Brown suffered a serious physical injury.

■ We address sufficiency-of-the-evidence questions first because if the judgment of conviction is not supported by substantial evidence, an appellant may not be tried again under the principle of double jeopardy. *Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001). The two convictions will be discussed separately.

a. Battery conviction.

■ ■ Arkansas Rule of Criminal Procedure 33.1(a) requires that a motion for directed verdict "shall state the specific grounds therefor." In interpreting this rule, we have held that to preserve the issue of sufficiency of the evidence to support a conviction of a lesser included offense, a defendant's motion for directed verdict must address the elements of the lesser included offense. *Moore v. State*, 330 Ark. 514, 954 S.W.2d 932 (1997) (citing *Webb v. State*, 328 Ark. 12, 941 S.W.2d 417 (1997); *Jordan v. State*, 323 Ark. 628, 917 S.W.2d 164 (1996)). In *Walker v. State*, 318 Ark. 107, 883

S.W.2d 831 (1994), this court discussed the rationale behind these holdings:

> Other practical reasons have caused us to require that the grounds for the motion be specified. In multiple-count cases, which mandate different degrees of culpability for the lesser included offenses, it is easy for an element of one of the counts for lesser included offenses to be overlooked. Since a general motion for a directed verdict does not specify the missing element, the trial court is not apprised of the proof that was overlooked. As a result, the trial court is not made aware of the deficiency.

*Walker*, 318 Ark. at 108, 883 S.W.2d at 832 (citing *Sanders v. State*, 310 Ark. 510, 383 S.W.2d 359 (1992)). Thus, this court has made it clear that a defendant, in making his motions for directed verdict, must anticipate an instruction on lesser included offenses and specifically address the elements of that lesser included offense on which he wishes to challenge the State's proof in his motion.

■ At trial, Brown moved for directed verdict specifically as to first-degree battery on the theory that the State failed to prove serious physical injury to Shirley Brown. Brown did not argue any aspect of second- or third-degree battery. Accordingly, Brown waived his opportunity to mount a challenge on appeal to the sufficiency of the evidence supporting his conviction for second-degree battery, and this issue is not preserved for our review.

b. Terroristic act.

■ Brown's challenge to the sufficiency of the State's evidence supporting the terroristic-act conviction is preserved. Brown argued at trial that the State failed to prove by substantial evidence that Brown caused his wife "serious physical injury." The phrase "serious physical injury" is statutorily defined:

> "Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ[.]

Ark. Code Ann. § 5-1-102(19) (Repl. 1997). *See also Harmon v. State,*, 340 Ark. 18, 8 S.W.3d 472 (2000); *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999). Whether a victim has suffered serious physical injury is an issue for the jury to decide. *Bangs v. State, supra* (citing *Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991)).

The cases interpreting this definition in the context of sufficiency challenges illustrate the degree of evidence necessary to sustain a finding of serious physical injury. In *Harmon, supra,* this court affirmed a conviction where the offense was based on serious physical injury and noted that the victim had spent three days in intensive care; had suffered a long-term loss of taste, smell, and memory; and had to undergo facial plastic surgery. Likewise, in *Bangs, supra,* we affirmed a jury's finding of serious physical injury where the victim suffered bruises on her forehead and face, two lacerations on her scalp which required staples, and numerous blunt-object injuries to her neck and the back of her head.

This court has also considered whether gunshot wounds constituted serious physical injury on several occasions. In *Witherspoon v. State,* 319 Ark. 313, 891 S.W.2d 371 (1995), the victim was hospitalized for two days, and a bullet remained lodged in his hip. The victim also suffered superficial graze wounds to his hand and thumb. The shot to the hip narrowly missed his bones and arteries. This court held these wounds to be sufficient evidence of serious physical injury to sustain the conviction. In *Henderson v. State,* 291 Ark. 138, 722 S.W.2d 842 (1987), this court upheld a jury's finding of serious physical injury by a gunshot wound where the victim was shot two times in the feet and legs. The victim was hospitalized for one night and one day and could not return to work for a month.

Brown's argument is that under the statutory definition quoted above (§ 5-1-102(19)), he did not cause Shirley Brown a serious physical injury because she now has made a full recovery. We disagree. The facts indicate that she did in fact suffer a serious physical injury, regardless of her recovery. She was hospitalized for nine days and required surgery to remove a portion of her intestine. She had to wear a colostomy for three months. Clearly, Shirley Brown's injuries were far more severe than those at issue in either *Witherspoon* or *Henderson,* where we upheld a finding of serious physical injury. The circuit court's decision on this point is affirmed.

## II. Double Jeopardy

Brown next contends that he was charged and convicted of both a terroristic act and second-degree battery in violation of his statutory and constitutional rights to be free from being twice put in jeopardy. During the trial, he argued to the circuit court at the close of the State's case and again at the close of all the evidence

that the State should be required to elect between the first-degree battery charge and the terroristic-act charge with regard to conduct relating to Shirley Brown. Now, on appeal, the jury having convicted him of second-degree battery instead of first, he posits three theories on how convictions for both second-degree battery and a terroristic act violate double jeopardy. The State's response is a procedural argument. It asserts that Brown failed to preserve this point for appeal by neglecting to be sufficiently specific in his motion for directed verdict.

■ We agree with the State that this issue is not preserved, but do so for a different reason. We believe that raising the issue of double jeopardy in a motion for directed verdict was premature since the motion at that stage of the proceedings could only relate to *charged* offenses. After the jury's verdicts on the various convictions were returned, Brown failed to make any motion whatsoever. Brown's issue on appeal clearly relates to multiple *convictions* for the same conduct and not to multiple *charges* for the same conduct, and our Criminal Code makes this distinction very clear:

> When the same conduct of the defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense.

Ark. Code Ann. § 5-1-110(a)(1) (Repl. 1997). Thus, a defendant cannot object to a double jeopardy violation until he has actually been convicted of the multiple offenses, because it is not a violation of double jeopardy under § 5-1-110(a)(1) for the State to charge and prosecute on multiple and overlapping charges. It was only after the jury returned guilty verdicts on both offenses that the circuit court would be required to determine whether convictions could be entered as to both based on the same conduct. *See* Ark. Code Ann. § 5-1-110(a)(1) (Repl. 1997); *Hill v. State*, 314 Ark. 275, 862 S.W.2d 836 (1993) (citing *Hickerson v. State*, 282 Ark. 217, 667 S.W.2d 654 (1984); *Swaite v. State*, 272 Ark. 128, 612 S.W.2d 307 (1981)).

■ Because Brown moved for a directed verdict based on double jeopardy before he was convicted of any offense, his motion was ineffective. Because he then failed to object after the jury convicted him of both charges, he waived his double jeopardy argument for purposes of appeal. We conclude that the circuit court committed no error as to double jeopardy, and we affirm the court on this point.

### III. Mistrial

For his final point, Brown contends that the circuit court should have granted his motion for declaration of a mistrial because the jury was hopelessly confused during sentencing deliberations. The State maintains in response that there was no abuse of the circuit court's discretion in denying the motion for a mistrial.

During the jury's deliberations following the penalty phase of the trial, these events transpired. The circuit court received a series of notes from the jury, asking these questions:

(1) "Do we have to sentence to years & fine or one of [sic] the other?"

(2) "What is the minuim [sic] fine for the Class B & Class D?"

(3) "Can he be sentenced on the Class Y felony, to probation or suspended sentence, or something less than 10 years?"

(4) "What happens if we can not agree to time for the Class Y felony?"

These notes were answered by the judge in writing.[1] The jury then returned a verdict imposing no punishment whatsoever for the Class B terroristic act conviction or the Class D second-degree battery conviction. As to the Class Y felony, the jury did impose a sentence of ten years in accordance with sentencing requirements. The circuit court then reinstructed the jury that it had to impose some sentence within statutory minimums and maximums for Class B and Class D felonies and sent the jury back to deliberate further. The jury returned verdicts of $1.00 fines for the Class B and Class D felonies. Along with these verdicts, the jury returned a note unanimously recommending that the ten-year sentence for the Class Y felony, which they imposed during the first deliberations, be suspended. While the jury was deliberating after initially returning the illegal sentence and being reinstructed by the circuit court, defense counsel moved for a mistrial based on jury confusion, as evidenced by the four notes the jury had sent to the circuit court and by its failure to assess punishment for the Class B and Class D felonies. The circuit court denied this motion.

---

[1] No issue is raised by the defendant regarding a violation of Ark. Code Ann. § 16-89-125(e) (1987), and we do not address that issue.

The declaration of a mistrial is an extreme remedy, which should only be granted when justice cannot be served by continuing the trial. *E.g., Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001); *Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001); *Woods v. State*, 342 Ark. 89, 27 S.W.3d 367 (2000). A mistrial should only be declared when the fundamental fairness of the trial itself has been manifestly affected. *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996) (citing *King v. State*, 317 Ark. 293, 877 S.W.2d 583 (1994)). Declaring a mistrial is proper only where the error is beyond repair and cannot be corrected by any curative relief. *Taylor v. State*, 334 Ark. 339, 974 S.W.2d 454 (1998); *Kimble v. State*, 331 Ark. 155, 959 S.W.2d 43 (1998). The circuit court has wide discretion in granting or denying a motion for a mistrial, and this court will not disturb the court's decision absent an abuse of discretion or manifest prejudice to the movant. *See Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998); *King v. State, supra*; *Banks v. State*, 315 Ark. 666, 869 S.W.2d 700 (1994).

It appears clear to this court that the jury at first questioned whether it could suspend the ten-year sentence for the Class Y felony and later recommended a suspension. It then showed some reluctance to impose punishment for the Class B and Class D felonies. However, it does not necessarily follow that the jury was confused. The jury was first striving for a way to avoid sentencing Brown to a term of years for the Class Y felony or punishing Brown in any respect for the Class B and Class D felonies. But when the circuit court made it clear that the jury was under a statutory duty to do so, it complied. Under these circumstances, it cannot be said that refusing to grant a mistrial was an abuse of the trial court's discretion. The jury eventually did return valid sentences for the Class Y, Class B, and Class D felonies that followed the statutory guidelines. The circuit court is affirmed on this point.

Affirmed.

GLAZE, J., concurring.

IMBER, J., not participating.