2009 Ark. App. 695

Xzavier Arthur BUTLER, Appellant,

v.

STATE of Arkansas, Appellee.

No. CA CR 09–285.

Court of Appeals of Arkansas.

Oct. 21, 2009.

William R. Simpson, Jr., Public Defender, Sharon Kiel, Deputy Public Defender, by: Clint Miller, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: LeaAnn J. Irvin, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge.

⌊₁A jury in Pulaski County Circuit Court convicted appellant Xzavier Butler of two counts of first-degree murder, Class Y felonies, and one count of committing a terroristic act, a Class Y felony. Appellant was sentenced to sixty-five years' imprisonment in the Arkansas Department of Correction on each charge, to be served consecutively, for a total of 195 years' imprisonment. As his sole point on appeal, appellant challenges the sufficiency of the evidence as to his terroristic-act conviction.[1] We affirm.

On January 29, 2008, the State filed a four-count felony information against appellant, alleging that on or about September 11, 2007, appellant committed two counts of first-degree murder and one count of committing a terroristic act. The State alleged a firearm ⌊₂enhancement for each of the three felony offenses and alleged that appellant was a habitual offender with four or more prior felony convictions.

At trial, the evidence showed that on September 11, 2007, appellant stepped out of his motel room at the America's Best Value Inn and fired five shots from a .45–caliber semiautomatic pistol through the front windshield of an automobile that was parked close to his motel room door. Three victims were inside the vehicle. All three men were struck by bullets fired by appellant. Two of the victims, Daryl Wiggins and Brian Washington, suffered fatal gunshot wounds. The third and only surviving victim, Michael Jenkins, suffered a gunshot wound to the left foot.

Michael testified at trial that he knew of appellant prior to the shooting in that he had "seen him around a couple of times." He testified that on September 11, he,

---

1. On appeal, appellant is challenging only the sufficiency of the evidence as to his terroris- tic-act conviction, not the sufficiency of the evidence as to his two murder convictions.

Daryl Wiggins, and Brian Washington took Michael's vehicle to the America's Best Value Inn in order for Daryl to meet a girl named Serena. On the way to the motel, Daryl drove Michael's vehicle, and Michael sat in the front passenger seat. When they got to the motel, they parked "around the back." Daryl and Serena "engaged in what appeared to be friendly talk." Michael testified that while they were sitting in the parking lot, appellant drove up, "bumping his music." Michael testified that the music caught his attention, and he looked over at appellant. Appellant then walked over to Michael's vehicle, and he and Michael exchanged phrases, such as "What are you looking at?" "We ain't looking at nothing," and "You looked at me wrong." Michael conceded that he and appellant "were arguing." Appellant then walked |3around to Michael's side of the car, and Michael "kind of opened [his] door." Appellant then said, "Oh, okay, okay," and walked to his motel room. Michael testified that at that point, he thought "something's not right here." Michael watched appellant as he entered his motel room. He stated that he saw "the sheets kind of move" and thought appellant was "grabbing something." Michael told Daryl that they needed to leave. Michael testified that appellant began walking toward his car "saying something." Michael could not hear appellant, but saw a pistol in appellant's hand. As appellant walked toward the vehicle, he began shooting "right into the windshield," "[s]traight at us like he [was] trying to kill all of us."

Michael was riding in the front passenger seat with the seat back "leaned back," so when he saw appellant about to fire, he was able to flip his body from the front seat to the back seat. Michael exited the vehicle through the back door and ran to "duck down" behind a white van parked near them. Michael soon "looked up" and

saw appellant. He testified that appellant said, "It's time to go," walked back to his car, and drove away. Michael testified that Daryl was hiding with him behind the white van. He and Daryl then went to check on Brian, who was still in the vehicle. Michael opened the car door and saw that Brian was "kind of breathing" and "not responding." Then, Daryl "hit the ground." Michael ran upstairs to find Serena hiding in her room. Michael also spoke with a white male who told Michael that he saw appellant and got his license-plate number. The man called the police.

Michael, then realizing that he had been wounded, wrapped his foot with a towel. When the police arrived, he "told them what happened." Michael testified that he was "not |4for sure why did he shoot at us." After describing the events to the officers, Michael was taken to the hospital. Michael explained that the bullet hit the "bottom of [his] foot." The bullet entered underneath his foot and exited on the side of his foot. He had scars from the wound. He explained that he had "problems all the time with [his] foot now." He stated that he was often unable to wear any shoes. He described a "ball up under where [he] got, where the hole was at, and it's like really tender in there." He had pain that prevented him from playing basketball.

Appellant testified as to his version of the events of September 11, 2007. He stated that he and Michael Jenkins were both members of the Gangster Disciples. He testified that earlier in the day on September 11, 2007, he was at Buck's gas station in Jacksonville, Arkansas, when Michael Jenkins and two other men "pulled in." Appellant alleged that Michael and the others were staring at him and giving him looks of disgust. They began to call each other names, and Michael threatened appellant by stating, "You can die tonight." Appellant stated

that he got in his car and drove away. That night, when appellant arrived at the America's Best Value Inn where he was staying, he was walking to his room when Michael leaned out of his vehicle and yelled at appellant. Appellant testified that as the men were exchanging words, Michael, Daryl, and Brian got out of the vehicle.[2] Appellant testified that he saw a gun in Daryl's hand as he backed up into his motel room. Appellant grabbed his gun from the nightstand, loaded the chamber, and went back outside to get in his car to leave. When he came out from his room, Michael was still "hollering" and shouted, "[W]hat's you going to do with that?" When appellant saw Daryl raise his pistol, appellant testified that he began shooting in order "to protect [him]self." He stated that he shot two times and then three more times. Appellant then ran to his vehicle and drove away. He ultimately fled to Michigan but returned to Arkansas and turned himself in to authorities. At the close of the State's case, appellant's counsel made several motions for directed verdict, and renewed the motions at the close of all the evidence. The trial court denied the motions. The case was submitted to the jury, and the jury returned guilty verdicts on two counts of first-degree murder and one count of committing a terroristic act. This appeal followed.

■■■ When the sufficiency of the evidence is challenged, the test is whether substantial evidence supports the verdict. *Mosley v. State,* 87 Ark.App. 127, 130, 189 S.W.3d 456, 458 (2004). Substantial evidence is evidence of sufficient force and character to compel a conclusion beyond suspicion or conjecture. *Hutcheson v. State,* 92 Ark.App. 307, 313, 213 S.W.3d 25, 29 (2005). We review only evidence that

supports the conviction and do not weigh it against other evidence that is favorable to the accused. *Turbyfill v. State,* 92 Ark. App. 145, 149, 211 S.W.3d 557, 559 (2005). The fact finder is free to believe all or part of a witness's testimony. *Harmon v. State,* 340 Ark. 18, 24, 8 S.W.3d 472, 476 (2000). Further, we do not weigh credibility of witnesses on appeal; such matters are left for the fact finder. *Turbyfill,* 92 Ark.App. at 149, 211 S.W.3d at 559.

■■■ Appellant argues that the State failed to introduce substantial evidence that the victim sustained serious physical injury as a result of appellant's conduct. Appellant concedes that Michael suffered a physical injury, but maintains that the State failed to prove that Michael's injury was a *serious* physical injury. In pertinent part, Arkansas Code Annotated section 5–13–310(a)(1)(A) and (B) (Repl.2006) provides that for the purposes of this section, a person commits a terroristic act if, while not in the commission of a lawful act, the person shoots at or in any manner projects an object with the purpose to cause injury to another person or damage to property at a conveyance that is being operated or that is occupied by another person. Any person who commits a terroristic act as defined in subsection (a) of this section is deemed guilty of a Class Y felony if the person with the purpose of causing physical injury to another person causes serious physical injury or death to any person. Ark.Code Ann. § 5–13–310(b)(2). "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." Ark.Code Ann. § 5–1–102(21) (Repl.2006).

---

**2.** However, on re-cross, appellant testified that Michael, Daryl, and Brian were inside the vehicle when he fired the shots.

Our courts have considered whether gunshot wounds constituted serious physical injury on several occasions. *See Brown v. State,* 347 Ark. 308, 65 S.W.3d 394 (2001). In *Brown,* James Brown was chasing his wife, each in their respective vehicles, when Brown shot at his wife's van, hitting it nine times and wounding her. *Id.* She was taken to the hospital with two gunshot wounds to the hip that had pierced her small intestine, requiring surgery and a temporary colostomy. *Id.* In *Brown,* the court stated,

In *Witherspoon v. State,* 319 Ark. 313, 891 S.W.2d 371 (1995), the victim was hospitalized for two days, and a bullet remained lodged in his hip. The victim also suffered superficial graze wounds to his hand and thumb. The shot to the hip narrowly missed his bones and arteries. This court held these wounds to be sufficient evidence of serious physical injury to sustain the conviction. In *Henderson v. State,* 291 Ark. 138, 722 S.W.2d 842 (1987), this court upheld a jury's finding of serious physical injury by a gunshot wound where the victim was shot two times in the feet and legs. The victim was hospitalized for one night and one day and could not return to work for a month.

Brown's argument is that under the statutory definition quoted above (§ 5–1–102(19)), he did not cause Shirley Brown a serious physical injury because she now has made a full recovery. We disagree. The facts indicate that she did in fact suffer a serious physical injury, regardless of her recovery. She was hospitalized for nine days and required surgery to remove a portion of her intestine. She had to wear a colostomy for three months.

*Brown,* 347 Ark. at 316, 65 S.W.3d at 399.

In this case, as a result of appellant firing numerous shots at Michael, Daryl, and Brian, Michael suffered a gunshot wound from a .45–caliber semiautomatic pistol to his left foot that was serious enough that he was taken to the emergency room. Michael testified that he still had pain and tenderness when walking and that he was often unable to wear shoes because of the lasting effects of the wound. Michael also stated that he was unable to engage in activities that he participated in before the shooting, such as basketball. Michael continued to have problems with his foot, and he had visible scarring from the entry and exit of the bullet. We hold that Michael's injuries constituted a serious physical injury. *See also Enoch v. State,* 37 Ark.App. 103, 826 S.W.2d 291 (1992) (finding a serious physical injury where the victim testified that as a result of being struck by a rock, he suffered a bruised shoulder, a damaged nerve in his arm, and numbness and weakness in grip that remained at the time of trial).

Appellant also alleges that Michael's testimony is not sufficient to prove that the .45–caliber gunshot wound to Michael's left foot created a substantial risk of death or caused him protracted disfigurement, protracted impairment of health, or the loss or protracted impairment of the function of his left foot. Appellant concedes that a serious physical injury need not be proven by expert medical testimony because the jury is not required to set aside common knowledge and may consider the evidence in light of its observations and experiences, citing *Bell v. State,* 99 Ark.App. 300, 259 S.W.3d 472 (2007), and *Johnson v. State,* 26 Ark.App. 286, 764 S.W.2d 621 (1989). Appellant is correct that expert medical testimony is not required. We hold that under these facts, Michael's testimony is sufficient to prove that he sustained a serious physical injury

from the gunshot wound inflicted upon him by appellant. As a result of the injury, Michael was taken to the hospital for treatment. Michael still suffers pain and discomfort from the bullet that entered the bottom of his left foot and exited the side of his foot, is restricted in his ability to wear a shoe on that foot, is restricted from his normal activities such as basketball, and has visible scarring.

Whether a victim has sustained serious physical injury, as well as the question of temporary or protracted impairment, are issues for the jury to decide. *E.g., Bangs v. State,* 338 Ark. 515, 998 S.W.2d 738 (1999). In determining whether a physical injury exists, a jury may consider the severity of the attack and may rely on its common knowledge, experiences, and observations in life to make this determination. *Linn v. State,* 84 Ark.App. 141, 133 S.W.3d |₉407 (2003). Here, substantial evidence to supports the jury's finding that Michael suffered a serious physical injury.

Affirmed.

GRUBER and BROWN, JJ., agree.