Cite as 2025 Ark. App. 407

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-24-606

| | | |
|---|---|---|
| | | Opinion Delivered September 3, 2025 |
| FRANK WHEELER | | |
| | APPELLANT | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT |
| V. | | [NO. 05CR-20-240] |
| STATE OF ARKANSAS | | HONORABLE JOHN R. PUTMAN, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Frank Wheeler was convicted in a jury trial of one count of rape and one count of second-degree sexual assault committed against his niece, Minor Child 1 (MC1), when MC1 was six years old. For these convictions, Wheeler was sentenced as a habitual offender to consecutive prison terms of fifty and thirty years. Wheeler now appeals and argues that (1) the evidence of second-degree sexual assault was legally insufficient; (2) the trial court abused its discretion in admitting testimony about Wheeler's prior bad acts involving other individuals; and (3) the trial court erred in denying Wheeler's request for a mistrial after an investigator testified that MC1's sister was also an alleged victim. We affirm.

A person commits rape "if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age." Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2019). "Deviate sexual activity" is defined as "any act of sexual

gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another person; or the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(A) & (B) (Supp. 2019). A person commits second-degree sexual assault "if the person, being eighteen years of age or older, engages in sexual contact with another person who is less than fourteen years of age." Ark. Code Ann. § 5-14-125(a)(3) (Supp. 2019). "Sexual contact" is "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(11).

## I. *Facts*

MC1 testified that she is presently eleven years old. In the summer of 2019, when MC1 was six, she lived with her father; her father's girlfriend; and her sister, MC2, who is a year older than MC1. Wheeler, MC1's uncle, was also living with them.

MC1 described an incident that happened at their house in the summer of 2019 when her father was at work and her father's girlfriend, Shannon, was at a job interview. According to MC1, she was with MC2 in the living room watching television and Wheeler was there. MC1 was sitting on the couch wearing a nightgown and underwear, and MC2 was sitting on the floor. Wheeler was sitting on the floor beside MC2, but then he got up and sat on the couch beside MC1.

MC1 testified that Wheeler was facing toward her on the couch and said "shh, don't tell anyone, I'm just checking to see if you're healthy." He then "got beside [her] legs and

2

moved [her] underwear to the side." MC1 stated that "he touched [her] down there," and "he put his finger beside it—inside of it" and that it felt uncomfortable. She stated that Wheeler did this only one time and that he did not do anything other than put his finger inside her. After he finished putting his finger inside her "he took it out and said [she] was healthy or something." Then Wheeler put her underwear back where it was. MC1 testified that Wheeler told her not to tell anyone and that if she did tell anyone, he would "hurt [her] or something like that."

About an hour later, Shannon returned home. MC1 immediately asked to speak with Shannon privately in the bathroom, and while they were in the bathroom, she told Shannon how Wheeler had touched her. Shannon called MC1's father at work, and she took both girls and left the house. MC1's father returned home a short while later, at which time Shannon and the girls also returned home. After he got home, MC1's father screamed at Wheeler and told him to leave the house. Wheeler called MC1 a liar, and MC1's father responded, "[M]y kids wouldn't ever lie about that type of stuff." MC1 stated that Wheeler packed his suitcase, and as he was leaving the house, he "flipped [her] off."

On cross-examination, MC1 was asked about a report regarding her disclosure to Shannon that Wheeler had "frequently touched her bottom, referring to her butt and vaginal area." MC1 stated, "I told her it happened to me and [MC2], too, sometimes. . . . I saw him touch my sister once, so I told her how he touched [MC2] and me before." MC1 confirmed that Wheeler had sexually assaulted her only once, which was on the living room couch in

the summer of 2019. She stated, "He didn't rub around. It's just he stuck his—because I know he stuck his finger inside of me."

Shannon testified that she recalled MC1 asking her to have a private conversation in the bathroom on the day of the incident. Shannon stated that while in the bathroom, MC1 said that "[Wheeler] has been trying to touch me down there." After they left the house that day, MC1 "was telling [Shannon] every—all her details," and Shannon "was shocked." According to Shannon, MC1 said that Wheeler "was rubbing her bottom and was telling her that it's okay that [he does] this." Shannon clarified that when MC1 said "bottom" she was motioning to her "private parts, like the vaginal area." MC1 said she told Wheeler to "cut it out," and he stopped. Shannon testified that both girls started going to counseling, which was "after we found out about [MC2], when [MC2] finally came forth."

Bryttany Wheeler,[1] a forensic interviewer at Grandma's House Children's Advocacy Center, conducted an interview with MC1. Bryttany testified that in the interview, MC1 disclosed that Wheeler had touched her bottom, but when shown an anatomically correct diagram, MC1 was actually referring to her vagina. Bryttany stated that MC1 "disclosed that he touched her vagina with his finger, pulled aside her panties, and touched the inside, and

---

[1]Bryttany Wheeler is no relation to appellant Frank Wheeler.

then put her panties back."[2]  According to Bryttany, MC1 stated that this happened one time.

Patrick Hirsch, a resource officer at MC1's school, testified about a journal entry written by MC1 in August 2021 that was brought to his attention.  Over Wheeler's objection, the journal entry was admitted into evidence but with the limiting instruction that it was to be considered only for MC1's credibility and not for the truth of the matter asserted.  The journal entry stated:

> I am proud of myself because [I] told my mom and dad about Frank[,] my dad's brother, touched my women part[]s and my sister's[.] . . . I told my parent[]s right away Frank sti[c]ked his middle finger up to me when he had to leave.  I'm proud I told my mom and dad[.]  Th[e]y kicked him out he was mad[.]  I was proud[.]  [I]f I didn't tell my mom and dad it would of got worst[.]

Lauralyn Terherst, a child-abuse and neglect investigator with the Arkansas State Police, testified that she interviewed MC1 in 2019 and again in 2021.  Lauralyn testified that the purpose of the 2021 interview was to determine whether MC1 had any additional disclosures other than what she had alleged in 2019 regarding Wheeler's digital penetration of her vagina, and Lauralyn found during the interview that MC1 was not making any additional allegations.  During the 2021 interview, MC1's statements were consistent with what she had previously disclosed in the 2019 interview.  The State then asked, "How do

---

[2]Although Wheeler objected to this testimony on the basis of hearsay, the trial court overruled the objection, and Wheeler declined the court's invitation to give a limiting instruction.  Wheeler makes no challenge to the admission of this testimony on appeal.

you complete the case when you determine that it is the same disclosure that had been previously made?" To that question, Lauralyn responded:

> In this case it was a little bit unique. But for the most part, if a disclosure is made—and this happens often, because if a child goes to someone and discloses sexual abuse, that person might be mandated to report that, so they'll call it into the hotline. So, we sometimes get those, and we look at the history and see if anything has been investigated before. And then we have to determine if we're investigating the same thing because we can't do two cases at the same time. So, generally, when that happens we will—if it's the exact same allegation that has been investigated before, and there's only one victim, we will close the case. And there's like a special type of closure you could do where it gets screened out, is what they call it, which means the investigation just doesn't go any further. *In this particular one, it was a little special because her sister was also added as an alleged victim, so I couldn't do the screen-out process, because [her] sister was also added.*

(Emphasis added.) Wheeler moved for a mistrial on the basis that the witness "has told the jury there is another investigation on another child." The trial court denied the motion but gave the jury this limiting instruction:

> The witness made reference to another investigation. I'm going to direct that you disregard that. We're here to try this case, not another. Do not consider it as it goes to guilt or innocence.

The State then sought to introduce the testimony of Jessica Hopper and Kendra Wheeler regarding prior bad acts Wheeler allegedly committed against them. Wheeler objected to this testimony under Arkansas Rules of Evidence 404(b) and 403, arguing that these prior bad acts were not similar to the charged conduct in this case and that any probative value was outweighed by unfair prejudice. The trial court overruled Wheeler's objection and permitted these witnesses to testify while giving the following limiting instruction:

6

Members of the jury, you are instructed that evidence of other alleged crimes, wrongs, or acts of Frank Wheeler may not be considered by you to prove the character of Frank Wheeler in order to show that he acted in conformity therewith. This evidence is not to be considered to establish a particular trait of character that he may have, nor is it to be considered to show that he acted similarly or accordingly on the day of the incident. This evidence is merely offered as evidence of intent, absence of mistake or accident, and/or a proclivity towards a specific act with minor females. Whether any other alleged crimes, wrongs, or acts have been committed is for you to determine.

Jessica Hopper testified that she is thirty-five years old and that Wheeler is married to her aunt, which makes him her uncle by marriage. Jessica stated that when she was ten or eleven, she would often visit her aunt and Wheeler, and they would all go swimming in a nearby river. Jessica stated that on multiple occasions, Wheeler would play a game he called "the octopus" in which he would approach her from behind in shallow water and wrap his legs around her, and his crotch would rub against her bottom. Jessica stated that she could feel Wheeler's erection. On other occasions when they were inside the house, Wheeler would give her a "bear hug" from behind and "lock his legs by the ankles" so that his crotch was touching her bottom. Jessica stated that this made her feel "very gross" and "very uncomfortable" and that, "even as a kid, you knew it just wasn't right."

Kendra Wheeler testified that she is thirty-six years old and that Wheeler is her paternal uncle. Kendra stated that when she was fourteen, she was riding in the front seat of Wheeler's car on a dirt road while her cousins rode in the back. Wheeler pretended to be lost and stopped the car. Kendra stated that Wheeler thought they were all was asleep, and "when he tried to get under [her] dress, [she] got out of the car." After she got out, Kendra went and sat on the back of the car. She stated that Wheeler followed her to the

7

back of the car and tried to "finger" her vagina but that she stopped him by holding his hand back. Kendra stated that it made her feel "disgusted" and that she "will never get that visual out of [her] head."

After the State rested, Wheeler moved for a directed verdict on both rape and second-degree sexual assault. In regard to rape, Wheeler argued that the State failed to present prima facie evidence that there was deviate sexual activity or sexual gratification, and in regard to second-degree sexual assault, he argued that the State failed to present prima facie evidence of sexual contact with MC1. The trial court denied both motions for directed verdict.

After the trial court denied Wheeler's directed-verdict motions, Wheeler objected to the State's moving forward on the charges of both rape and second-degree sexual assault, arguing that the evidence showed there was only one impulse. Wheeler argued, "It's a double-jeopardy issue at this point. They're trying him on two charges for one impulse or one act of conduct. . . . I think they need to pick a charge and go with it." The trial court denied Wheeler's motion to "pick a charge" and stated it would submit instructions to the jury on both rape and second-degree sexual assault.

The defense rested without calling any witnesses. Wheeler renewed his directed-verdict motion, and the trial court denied the motion. Wheeler also renewed his objection to submission of both charges on double-jeopardy grounds, and the trial court denied the motion.

The trial court then gave the jury instructions, which included instructions on the elements of rape and the elements of second-degree sexual assault. The instructions also

8

included an interrogatory that asked the jury to decide whether it found Wheeler was engaged in separate impulses as it relates to the charges of rape and second-degree sexual assault, and provided that if the jury found Wheeler engaged in one continuous impulse, it could convict on only one charge and not both charges.

The jury returned the interrogatory and checked the "yes" box for whether Wheeler had engaged in separate impulses as it relates to the charges of rape and second-degree sexual assault. The jury also returned verdicts finding Wheeler guilty of rape and second-degree sexual assault. For these convictions, the jury sentenced Wheeler to prison terms of fifty and thirty years, which were ordered to run consecutively as reflected on a sentencing order entered by the trial court. Wheeler appealed.

## II. *Discussion*

In this appeal, Wheeler raises three arguments: (1) the evidence of second-degree sexual assault was legally insufficient; (2) the trial court abused its discretion in admitting testimony about Wheeler's prior bad acts; and (3) the trial court erred in denying Wheeler's request for a mistrial.

### A. The Sufficiency of the Evidence of Second-Degree Sexual Assault

Wheeler does not challenge the sufficiency of the evidence supporting his rape conviction. He argues here, however, that there was no evidence of second-degree sexual assault.

In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Armstrong v. State*, 2020

9

Ark. 309, 607 S.W.3d 491. We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*

Although framed as a sufficiency-of-the-evidence challenge, Wheeler argues that under double-jeopardy principles, a defendant cannot be convicted twice for the same identical act.[3] He then argues that the allegations against him stemmed from one episode and one activity and that there was nothing in the testimony to suggest different sexual-assault offenses. He notes that in MC1's testimony, she stated that he put his finger "beside it—inside of it" and then pulled his finger back out. MC1 testified that this happened only one time on the couch, and she stated, "He didn't rub around. It's just he stuck his—because I know he stuck his finger inside of me." Wheeler asserts that, in the light most favorable to the State, the testimony was that he inserted his finger inside MC1's vagina, which if credited, would constitute rape. He contends, however, that there was no evidence that he touched or rubbed any other areas of MC1's body that would support an additional sexual-assault charge. He therefore claims that his conviction for second-degree sexual assault should be reversed and dismissed because the evidence was legally insufficient.

---

[3]The Double Jeopardy Clause of the Fifth Amendment protects criminal defendants from multiple punishments for the same offense. *Campbell v. State*, 2017 Ark. App. 340, 525 S.W.3d 465.

We conclude that Wheeler's double-jeopardy claim is not preserved for review because it was not timely raised below. The only double-jeopardy argument raised by Wheeler below was contemporaneous with his directed-verdict motion after the State and defense had rested its case—which was before the jury was instructed and before the jury returned its guilty verdicts on each charge. This was ineffective to preserve the issue for appeal because it was made prematurely before Wheeler was convicted of any offense.

The controlling case is our supreme court's decision in *Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001). Similar to this case, the appellant in *Brown* raised a double-jeopardy argument in his motion for directed verdict. The supreme court held that this was ineffective to preserve the double-jeopardy argument for appeal:

> We agree with the State that this issue is not preserved . . . . We believe that raising the issue of double jeopardy in a motion for directed verdict was premature since the motion at that stage of the proceedings could only relate to *charged* offenses. After the jury's verdicts on the various convictions were returned, Brown failed to make any motion whatsoever. Brown's issue on appeal clearly relates to multiple *convictions* for the same conduct and not to multiple *charges* for the same conduct, and our Criminal Code makes this distinction very clear:
>
> > When the same conduct of the defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense.
>
> Ark. Code Ann. § 5-1-110(a)(1) (Repl. 1997).[4] Thus, a defendant cannot object to a double jeopardy violation until he has actually been convicted of the multiple offenses, because it is not a violation of double jeopardy under § 5-1-110(a)(1) for the State to charge and prosecute on multiple and overlapping charges. It was only after the jury returned guilty verdicts on both offenses that the circuit court would be

---

[4]This provision in the Arkansas Code has remained unchanged. *See* Ark. Code Ann. § 5-1-110(a)(1) (Repl. 2024).

required to determine whether convictions could be entered as to both based on the same conduct. *See* Ark. Code Ann. § 5-1-110(a)(1) (Repl. 1997).

Because Brown moved for a directed verdict based on double jeopardy before he was convicted of any offense, his motion was ineffective. Because he then failed to object after the jury convicted him of both charges, he waived his double jeopardy argument for purposes of appeal. We conclude that the circuit court committed no error as to double jeopardy, and we affirm the court on this point.

*Brown*, 347 Ark. at 317, 65 S.W.3d at 399–400 (citations omitted). *See also Taylor v. State*, 2019 Ark. App. 348, 582 S.W.3d 870.

Pursuant to our supreme court's holding in *Brown*, a defendant cannot object to a double-jeopardy violation on the basis of overlapping charges in the same prosecution until he has actually been convicted of multiple offenses, and if he fails to object after being convicted, his double-jeopardy argument is waived. Here, Wheeler's double-jeopardy argument below was ineffective because he had not yet been convicted of any offense. Because his double-jeopardy argument was not raised to the trial court after he was actually convicted, that argument has been waived.

To the extent Wheeler's argument under this point is a challenge to the sufficiency of the evidence supporting his second-degree sexual-assault conviction, that argument is clearly without merit. A person commits second-degree sexual assault "if the person, being eighteen years of age or older, engages in sexual contact with another person who is less than fourteen years of age." Ark. Code Ann. § 5-14-125(a)(3). "Sexual contact" is "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs . . . of a person[.]" Ark. Code Ann. § 5-14-101(11). In light of MC1's testimony, there was

12

substantial evidence that all the elements of this offense were satisfied; therefore, the trial court did not err in denying Wheeler's directed-verdict motion as to this charge.

Finally, as part of this point on appeal, Wheeler also argues that the trial court erred in giving a jury instruction—the interrogatory on impulse—because it confused the jury and the factual issues the jury had to decide. However, this argument is not preserved for appeal because Wheeler did not object to the instruction below. *See Bridges v. State*, 327 Ark. 392, 399, 938 S.W.2d 561, 565 (1997) ("It is well settled that no party may assign as error the giving or failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection."). Because this issue is not preserved, we make no comment on the propriety of this jury instruction.

## B. Wheeler's Prior Bad Acts

Wheeler next argues that the trial court erred in admitting the testimony of Jessica Hopper and Kendra Wheeler regarding his prior bad acts. Wheeler notes that neither of these witnesses reported actual rape. He contends that his conduct with respect to these witnesses was neither similar to the conduct with which he was charged nor relevant, and he argues further that any relevance was substantially outweighed by the danger of unfair prejudice. Our standard of review for evidentiary rulings is whether the trial court abused its discretion. *Greeno v. State*, 2023 Ark. App. 500, 678 S.W.3d 617.

Rule 404(b) of the Arkansas Rules of Evidence provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he

acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other crimes will be admitted if it has independent relevance, and the relevance is not substantially outweighed by the danger of unfair prejudice; evidence is independently relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Cuevas-Flores v. State*, 2024 Ark. App. 451, 699 S.W.3d 156.

Furthermore, our supreme court has recognized a "pedophile exception" to Rule 404(b) as explained in *Hamm v. Hamm*, 365 Ark. 647, 652–53, 232 S.W.3d 463, 468–69 (2006):

> This court has recognized a "pedophile exception" to Rule 404(b), which allows evidence of similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. The rationale for recognizing the exception is that such evidence helps to prove the depraved instinct of the accused. The basis of the pedophile exception to Rule 404(b) is our acceptance of the notion that evidence of sexual acts with children may be shown, as that evidence demonstrates a particular proclivity or instinct. For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. We also require that there be an "intimate relationship" between the perpetrator and the victim of the prior act. . . . [T]he pedophile exception [is] applicable if the victim [was] under the authority of the perpetrator or in his care.

(Citations omitted.) In *Hamm*, the supreme court held that evidence that appellant touched a young girl's buttocks underneath her clothing was properly admitted under the pedophile exception in a case in which the appellant was charged with penetrating the victim's vagina with his finger. The supreme court in *Hamm* noted that the cases were sufficiently similar

14

under the pedophile exception because, among other things, the gender of the victims was the same, both victims had met the appellant at the church, and neither victim was related to the appellant. The supreme court also applied the pedophile exception in *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998), and stated, "[T]he pedophile exception seems especially applicable in view of the evidence that Mr. Hernandez was attracted to the physical characteristics of young girls." *Id.* at 308, 962 S.W.2d at 760. Finally, in *Meacham v. State*, 2025 Ark. App. 27, 707 S.W.3d 473, our court noted that Arkansas appellate courts have applied the pedophile exception to acts that occurred eleven, fourteen, and even twenty-eight years apart.

Applying these principles, we hold that the trial court did not abuse its discretion in admitting Jessica's or Kendra's testimony under the pedophile exception. Jessica's testimony showed that, when she was ten or eleven, Wheeler would hug her from behind and rub his erect penis against her backside. Kendra testified that when she was fourteen, Wheeler tried to "finger" her vagina, which was the same conduct Wheeler actually committed against MC1. In each case, the victim was a young girl and was also Wheeler's niece with whom he had a supervisory role at the time. This testimony was relevant to show Wheeler's depraved sexual instinct and his proclivity for molesting young girls. Accordingly, we conclude that there was no error in admitting the testimony.

## C. Wheeler's Motion for Mistrial

Wheeler's final argument on appeal is that the trial court abused its discretion in denying his request for a mistrial after investigator Lauralyn Terherst made a statement in

15

her testimony about MC1's older sister also being an alleged victim. Lauralyn testified that she interviewed MC1 in 2021, and the goal was to determine whether MC1 was disclosing anything other than what she had disclosed in 2019. Lauralyn stated that there were no new disclosures, at which point the State asked, "How do you complete the case when you determine that it is the same disclosure that had been previously made?" Lauralyn gave a lengthy narrative response that concluded with the following: "In this particular one, it was a little special because her sister was also added as an alleged victim, so I couldn't do the screen-out process, because [her] sister was also added." Wheeler moved for a mistrial and argues on appeal that it should have been granted because of the insinuation that he was also the suspect in an investigation involving MC1's sister.

A mistrial is an extreme and drastic remedy to be used only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Russell v. State*, 306 Ark. 436, 815 S.W.2d 929 (1991). A trial court may grant or deny a motion for mistrial utilizing sound discretion, and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. *See King v. State*, 298 Ark. 476, 769 S.W.2d 407 (1989). Among the factors considered by this court on appeal in determining whether a trial court abused its discretion in denying a mistrial motion are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. *Hall v. State*, 2018 Ark. App. 474, 561 S.W.3d 333. The abuse-of-discretion standard is a high threshold that does not simply require error in the trial court's decision but requires that the trial court

16

act improvidently, thoughtlessly, or without due consideration. *Hortenberry v. State*, 2017 Ark. 261, 526 S.W.3d 840.

Instead of granting a mistrial, the trial court exercised its discretion and admonished the jury to disregard Lauralyn's objectionable statement about there being another investigation. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *McClendon v. State*, 2019 Ark. 88, 570 S.W.3d 450. Additionally, it is clear that the prosecutor did not deliberately induce Lauralyn's statement. Finally, we will not reverse absent a showing of prejudice, and a defendant cannot show prejudice from the denial of a mistrial motion when the allegedly offending statement is merely cumulative of other testimony offered earlier on the trial. *See Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000). Prior to Lauralyn's testimony, MC1 testified on cross-examination without objection that Wheeler had also inappropriately touched her sister. Similarly, MC1's father's girlfriend, Shannon, testified without objection that both girls started going to counseling "after we found out about [MC2], when [MC2] finally came forth." Given these considerations, we hold that the trial court did not abuse its discretion in denying Wheeler's motion for mistrial.

## III. *Conclusion*

For the reasons stated herein, Wheeler's arguments on appeal are either unpreserved or are without merit. Therefore, we affirm Wheeler's convictions for rape and second-degree sexual assault.

Affirmed.

KLAPPENBACH, C.J., and HARRISON, J., agree.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: Joseph Karl Luebke, Ass't Att'y Gen., for appellee.